**UNITED STATES v. BOUZIDEN.**

No. 16623.

United States District Court
W. D. Oklahoma.

Nov. 13, 1952.

Harry G. Foreman, Asst. U. S. Atty., Oklahoma City, Okl., for plaintiff.

Rutherford Brett, Oklahoma City, Okl., and Hayden C. Covington, Brooklyn, N. Y., for defendant.

WALLACE, District Judge.

The defendant, Thomas Bouziden, was indicted being charged with a violation of the Selective Service Act of 1948,[1] in that he knowingly refused to submit to induction, in compliance with a valid order of his Local Draft Board.

The defendant pleaded not guilty. He contended that the denial of a I–O classification was arbitrary and capricious and without basis in fact, and that there was a denial of due process of law.[2]

The case was tried by the court without a jury.[3]

The defendant was born on September 28, 1926, in Woods County, Oklahoma. He registered with his local board on September 9, 1948. He was classified I–A December 29, 1948. He was ordered to take a physical examination and was found acceptable on August 23, 1950. On August 30, 1950, he appeared before the local board. On September 7, 1950, he was notified of a I–A classification following the personal appearance hearing. On September 18, 1950, the file was forwarded to the appeal board whereupon it was turned to the Department of Justice for investigation, hearing, and recommendation. On December 4, 1950, the hearing officer made a report to the Department of Justice. On January 5, 1951, the Department of Justice recommended that the appeal board deny the registrant the status of a conscientious objector. On January 20, 1951, the appeal board classified him I–A. On February 2, 1951, the registrant was ordered to report for induction at Oklahoma City. He appeared and refused to be inducted. He was determined by the commanding officer of the induction station not to be eligible for induction because of a previous criminal conviction.[4] Subsequently, the State Director requested and received from the Commanding General at Fort Sam Houston a waiver of the disqualification.

His case was reopened and on June 19, 1951, he was notified of a I–A classification. He was granted a personal appearance before the board July 11, 1951. Again being classified I–A he filed a notice of appeal to the appeal board. On August 8, 1951, he reported for a physical examination and was found acceptable. On October 17, 1951, the appeal board once again referred his file to the Department of Justice for a second time for another investigation, hearing, and recommendation. On January 19, 1952, a hearing was conducted, a report of which was made by the hearing officer on February 13, 1952. The Department of Justice on February 26, 1952, adopted this report and recommended that the appeal board deny the conscientious objector status. The local board ordered the registrant to report for induction April 29, 1952. He reported, went to the induction station and refused to submit to induction.

Defendant contends there was no basis in fact for the denial of the claim for classification as a conscientious objector against combatant and noncombatant mili-

1. 62 Stat. 604, 50 U.S.C.A.Appendix, § 451 et seq.

2. I–A Classification (unlimited military service)
   I–O Classification (conscientious objector opposed to both combatant and noncombatant military service).

3. Federal Rules of Criminal Procedure, rule 23, 18 U.S.C.A.

4. Registrant was indicted by a Federal Grand Jury, Western District of Oklahoma, at Oklahoma City, Oklahoma, on January 10, 1946, for failure to report for induction under the Selective Training and Service Act of 1940, 50 U.S.C. A.Appendix, § 301 et seq. He was tried, found guilty and on February 4, 1946, sentenced to serve three years in custody of the Attorney General and was delivered to the warden of the U. S. Reformatory, El Reno, Oklahoma.

tary service and thus the denial by the draft board was arbitrary and capricious.

■ By now it is elementary that this court cannot weigh the evidence to determine whether the classification made by the local board was justified. The decisions of the local board made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant.[5]

■ The court has diligently studied the file of the registrant. Without designating with particularity the court believes there is basis in fact for the finding that the registrant does not have a deep-seated, conscientious objection based upon religious training and belief as required by statute.[6] In this connection counsel for the defendant insists that immoral conduct even if true is not relevant, and that such conduct has nothing to do with the belief of a registrant and his conscientious objections to participation in war in any form. With this the court cannot agree. How else can the officials who have a function in classifying arrive at an intelligent opinion as to what a registrant believes? It is imperative that there be some positive correlation between the religious profession the registrant makes and the conduct he pursues. There is no other reasonable standard upon which an objective conclusion can rest.

■ The defendant contends that his former conviction under the Selective Service Act of 1940 disqualifies him for military service. Section 456 of the 1948 Act provides:[7]

"(m) No person shall be relieved from training and service under this title * * * by reason of conviction of a criminal offense, except where the offense of which he has been convicted may be punished by death, or by imprisonment for a term exceeding one year."

The court finds no previous ruling on this point. However, it appears to the court that Congress intended that the Selective Service System be endowed with authority to reject a registrant for this reason and that it is a discretionary power usable by the United States Government or the Selective Service System. Congress did not intend to confer a personal right or privilege upon a registrant-defendant.

In this case the heart of the controversy is the hearing held by the hearing officer at the time the appeal board referred the file to the Department of Justice just prior to the final classification by the appeal board.

Section 456(j) provides:[8]

"* * * Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. *Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing.* The Department of Justice shall, after such hearing, if the objections are found to be sustained, recommend to the appeal board that (1) if the objector is inducted into the armed forces under this title, he shall be assigned to noncombatant service as defined by the President, or (2) if the objector is found to be conscientiously opposed to participation in such noncombatant service, he shall be deferred. If after such hearing the Department of Justice finds that his objections are not sustained, it shall recommend to the appeal board that such objections be not sustained. The appeal board

5. Estep v. United States, 1945, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567.

6. 50 U.S.C.A. Appendix, § 456(j).

7. 50 U.S.C.A. Appendix.

8. Ibid.

shall, in making its decision, give consideration to, but shall not be bound to follow, the recommendation of the Department of Justice together with the record on appeal from the local board. * * *" (Emphasis supplied.)

As directed by the statute the Department of Justice made an appropriate inquiry. Then the hearing was held with the registrant for the purpose of determining the character and good faith of the objections of the registrant to his classification.[9] The undisputed evidence is that no mention was ever made by the hearing officer of the unfavorable information contained in the Federal Bureau of Investigation report. No opportunity was given to rebut this unfavorable information.

In recommending that the appeal board deny the registrant's claim for exemption the hearing officer wrote this "Conclusion":

"This registrant appeared personally together with his witness and cousin, Gene Tony Annett. Registrant had heretofore appeared before your hearing office (sic) in December, 1950, at which time your hearing officer found that the registrant's evidence did not measure up to those standards necessary to qualify him for the exemption claimed, and it was recommended that his claim be denied. *Since that time the evidence disclosed that the activities of the registrant were not altogether wholesome and in keeping with his claim for exemption by virtue of a deep seated religious belief. In fact his activities with the wife of a soldier who was then fighting in Korea is reprehensible, and his operation of the cafe at Ringwood, Oklahoma, was something less than it should have been. Your hearing officer, therefore, finds that the registrant is not entitled to the exemption which he claims.* (Emphasis supplied.)

The court does not believe that the hearing can be deemed a fair hearing as required under our most simple and fundamental concept of due process of law. The court is not implying that the hearing officer personally was intentionally guilty of any unfair conduct. However, the line of demarcation between a "fair" hearing and one that is basically "unfair" must be clearly projected.

The purpose of the hearing is to enable the hearing officer to form an intelligent opinion regarding the registrant. The opinion formed is reflected in the advisory recommendation to the appeal board. The hearing officer must not be permitted to withhold unfavorable information gained during the inquiry, and giving no opportunity to rebut at the hearing, *then use this same unfavorable information as a basis for his adverse advisory recommendation.* If this is done the hearing itself becomes a sham and a farce. Why hold a hearing to determine a fact if there is a predetermination of the fact and no intent to discuss the basis of the predetermination?

The hearing officer is not compelled to accept any explanation given to the unfavorable information, but to conduct a hearing that is fair in any sense of the word, he must entertain the viewpoint of both sides. Otherwise in reality there is no hearing!

The court is cognizant that deferment by reason of religious training and belief is not a constitutional right, but is a matter within the discretion of Congress.[10] Thus Congress was not required to provide the registrant the opportunity for a hearing. However, upon making this provision, there is a conclusive presumption that the fundamentals of a fair hearing were intended.

In United States v. Everngam,[11] the court said:

"Under these statutory provisions, the hearing, report, and recommenda-

9. As observed previously, this registrant actually went through the process of appeal twice, including going before the hearing officer twice after two separate F.B.I. inquiries. This is the hearing that took place February 9, 1952. See Report of Hearing.

10. 6 Cir., 1952, 194 F.2d 508, 513. Certiorari denied 343 U.S. 957, 72 S.Ct. 1052.

11. D.C.W.Va.1951, 102 F.Supp. 128, 130.

tion of the Department of Justice is an important and integral part of the conscription process for the protection of both the government and the registrant. The defendant had the right to have a fair hearing and a non-arbitrary report and recommendation by the Department of Justice to the appeal board.

\* \* \* \* \* \*

"It does not appear that any member of the appeal board felt himself bound by this report and recommendation or how far, if at all, it influenced the decision of the appeal board, but that is not enough. The report and recommendation was transmitted to the appeal board to use as an advisory opinion, and was considered and used (as the regulations require) by the appeal board in its subsequent classification of the defendant. \* \* \*

"The registrant is entitled to have a report and recommendation that is not arbitrary. Without it he is denied due process of law. Had such a report and recommendation been made, who can say that the hearing officer would not have recommended a different classification, or that the appeal board would not have made a different decision?"

In Imboden v. United States,[12] the court said:

"Appellant contends that he was denied due process of law when he was not permitted to know the names and addresses of the informants interviewed by the Federal Bureau of Investigation, and the information so obtained was used by the \* \* \* Department of Justice. [Citing cases.]

\* \* \* The procedure under the draft law and the resulting classification of the registrant is not a judicial trial with the right to be represented by counsel and to call, examine and cross-examine witnesses. [Citing cases.] \* \* \* "

Let it be emphasized that this court is not holding that a registrant may compel a hearing officer to produce reports compiled during the Department of Justice inquiry. The hearing certainly is not a judicial trial with attendant rights, including the right of cross-examination. However, the Imboden case supports the reasoning of the court in the case at bar. Although there the registrant was not entitled to the names and addresses of the informants to enable him to cross-examine, the hearing officer granted the very thing denied the registrant in the instant case—a fair hearing.[13] There the registrant was told what the unfavorable information was in substance, and the registrant had an opportunity to explain.

This court is not in the slightest implying that the defendant is entitled to a classification as a conscientious objector. That is a matter to be decided by his local board in accordance with the Selective Service Act and the Selective Service Regulations.

Because of the arbitrary report and recommendation of the hearing officer of the Department of Justice the defendant has been denied a right which is guaranteed to him under the law. The court finds that the order to report for induction was invalid and that the defendant is not guilty of violating the Selective Service Act or Regulations in refusing to obey an invalid order. The defendant is released

12. Footnote 10, supra.

13. The function of a draft board is quasi judicial. Dodez v. Weygandt, 6 Cir., 1949, 173 F.2d 965; Gibson v. Reynolds, 8 Cir., 1949, 172 F.2d 95. Doubtless, the function of the hearing officer under consideration is also quasi judicial.

What constitutes a fair hearing may vary dependent in part on whether the function of the hearing by nature is executive, legislative or judicial. The general principle applicable is that the court cannot and will not go into the weighing of the evidence by an administrative body or officer, nor can there be a claim of denial of due process even though irregularity and error is present. Nevertheless, it is a denial of due process if the fundamentals of a fair hearing are not afforded. See West Ohio Gas Co. v. Public Utilities Commission of Ohio, 294 U.S. 63, 55 S.Ct. 316, 79 L.Ed. 761.

from custody without prejudice to further proceedings of the local board in conformity with this opinion.

The introduction into evidence at the time of trial of the report of the Federal Bureau of Investigation is now deemed irrelevant and immaterial and it shall be withdrawn from the record.