**UNITED STATES**

v.

**ADAMOWICZ.**

No. 53 Cr 284.

United States District Court
N. D. Illinois, E. D.
March 24, 1954.

Robert Tieken, U. S. Dist. Atty., Chicago, Ill., by James B. Parsons, Asst. U. S. Atty., Chicago, Ill., for the Government.

Francis S. Heisler, and Pearl Baer, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

The Government charges that the defendant was classified in Class I–A by a local board of the Selective Service System and ordered to report for induction into the armed forces of the United States. The Government further charges that the defendant knowingly refused to submit to induction at the appointed time. These charges were proved beyond a reasonable doubt at the trial, and the Government therefore asks that the defendant be found guilty of a violation of the Universal Military Training and Service Act, 50 U.S.C.A. Appendix, § 462. The defendant contends that his classification and the order which it supports are invalid, and has moved for a judgment of acquittal.

The defendant's Selective Service System file (Gov.Ex. A) indicates that on March 5, 1951, he was classified in Class 4–E, the Class then prescribed for registrants who were conscientiously opposed to participation in war in any form, including noncombatant service in the armed forces. On that date, three documents were in his file: (1) Selective Service System Form Number 100, the common classification questionnaire (Gov.Ex. A–1); (2) a letter written by the defendant to the local board (Gov. Ex. A–2); and (3) Selective Service System Form Number 150, a special form for conscientious objectors (Gov. Ex. A–3). These three documents contained the following information about the defendant's views toward participation in war:

In the classification questionnaire, Series XIV states: "Any registrant who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form shall sign the statement below requesting a Special

Form * * * from the local board." That statement was signed by the defendant. In answer to another question, the defendant stated that in his opinion he should be classified in Class 4–E or 4–F. The latter class is reserved for registrants who are physically disqualified for military service.

In a letter written to the local board on February 12, 1951, the defendant stated:

"I am also applying for a conscientious objector's application. I have felt all my life that killing and murdering of any kind was an offense against God and our country. I have never seen why people go to each others countries and destroy homes, land, and families. * * * I have been guided by my own conscience in what I am doing, but I am following my brother, Edward Adamowicz' footsteps, who was sent to prison during the last war as a conscientious objector."

The last document before the local board on March 5, 1951 is the special form for conscientious objectors, completed by the defendant. This form propounds a series of questions relating to the objector's religious training and belief. This series, called Series II, first asks whether the registrant believes in a Supreme Being. The defendant answered, "Yes." The registrant is then asked to state the nature of his belief, and whether or not the belief involves duties superior to those arising from any human relation. The defendant answered: "I believe that my duties to the Supreme Being are above those to the State. I do not see no sense in war and conscientiously can not participate in it." The registrant is then asked to explain how, when, and from whom or from what source he received the training and acquired the belief which is the basis of his claim for exemption. The defendant answered: "My moral convictions have been a direct source of my acquiring a distaste for violence and war of any kind. I have further been inspired by my brother and some of his

friends * * *." When asked to state the name of the individual upon whom he relied for religious guidance, the defendant stated: "I rely upon my inner inspiration." In another question, the defendant was asked to describe the actions and behavior in his life which in his opinion most conspicuously demonstrate the consistency and depth of his religious convictions. He answered: "Since I am but nineteen years of age I have devoted my life to my studies as well as on occasions worked evenings. But I have urged the President to issue a 'cease fire' in Korea, recognize China, and grant them admission to the U. N." The defendant also indicated, again in response to specific questions, that he did not believe in the use of force, except to restrain "psychopaths," and that he has expressed his views to a few friends. When asked in Series IV of the form, if he was a member of a religious sect or organization, the defendant answered, "Yes", and when asked to state the name of the sect and the name and location of its governing body, the defendant answered: "Rome, Italy." The defendant also stated that he does not customarily attend any church.

On the basis of the information contained in the three documents, the local board decided that the defendant was "by reason of religious training and belief" conscientiously opposed to participation in war in any form, and, on March 5, 1951, classified him in Class 4–E. A few months later, on June 19, 1951, Section 6(j) of the Universal Military Training and Service Act, 50 United States Code Annotated Appendix, § 456 (j), was amended materially. The amended Section, like the original, provides for two classes of conscientious objectors, one comprised of persons who object only to combatant service in the armed forces, and the other comprised of persons who object to both combatant and noncombatant service. The original Section provided for the deferment of persons in the latter class. However, under the amended Section, such persons may be ordered by their local boards to

perform certain civilian work for a period of 24 months.

On December 5, 1951, the State Director of Selective Service System for Illinois advised all Clerks of the local boards that:

" * * * the new Selective Service Regulations, issued pursuant to the 1951 Amendments to the Universal Military Training and Service Act, eliminate the former Class IV–E and establish a new class, Class I–O, for conscientious objectors who are available for civilian work. Registrants still retained in Class IV–E should therefore be reclassified and considered for the lowest class for which they are determined to be eligible * * *." (Gov.Ex. B).

Pursuant to these instructions, the Clerk of the defendant's local board mailed to the defendant another special form for conscientious objectors which was identical to the earlier form with one exception. The earlier form asked registrants to sign one of two statements—one statement recited that the registrant objected to combatant service, but would be willing to enter noncombatant service; and the second statement recited that the registrant objected to all service, and if the objection were sustained would be deferred under Section 6(j) of the Act. The revised form, mailed to the defendant in December, 1951, contained an additional clause in the second statement, which apprised the defendant that if his objections to both combatant and noncombatant service were sustained, he would be required to perform certain civilian work for a period of 24 months. The defendant deleted this additional clause, and signed the second statement; he thus indicated that he was unwilling to perform either military or civilian work. His answers to and comments upon the questions in the revised form were written upon separate sheets of paper, and, in commenting upon the alternative statements, he stated:

"What kind of choice is that? You could just as well ask me if I wanted to be sent to prison or the army. Naturally I wouldn't want any of them * * *. Why should I be ordered to do anything? All my life I was under the impression that this was a free country where men and women were given the privilege to worship, speak, and do as they see fit morally right."

The defendant's answers to the questions contained in this revised form (Gov.Ex. A9) constitute the only relevant additional information presented to the local board between March 5, 1951, and January 7, 1952, when the defendant was classified in Class I–A. Indeed, the Chairman of the local board testified that the second classification is based completely upon information supplied in the revised form. It is, therefore, well to note the exact nature of that information, and the manner in which it varies from and elaborates upon information supplied in the earlier form.

The defendant was again asked if he believed in a Supreme Being, and again, his answer was "Yes". When asked to state the nature of his belief, and whether or not the belief involved duties superior to those arising from any human relation, the defendant answered:

"Killing, looting, and raping are superior to problems arising from human relationship (War). Is it civilized to destroy personnel, property, human lives, and resources because a nation thinks differently? It is wrong for a man to steal, seriously wrong to kill a fellow neighbor, yet in war a man is asked to destroy someone that he has never met, saw, or known.

"A human problem is a problem that can be solved by peaceful means if only one nation was willing to compromise. A War shall never kill a problem; it shall just give birth to a more serious one."

The defendant was then asked to explain, how, when, and from whom or from what source he received the train-

ing and acquired the belief which is the basis of his claim, and he answered:

> "I received the training from no one, however I acquired the belief from my conscience. My conscience has always been my guide; I know that I'm doing right and that's all that matters."

When asked to state the name of the individual upon whom he relied for religious guidance, the defendant stated: "I received no religious instructions from any one * * * my past experience proved to me that the Church practices one philosophy and follows another." The defendant was again asked to describe the actions and behavior in his life which in his opinion most conspicuously demonstrates the consistency and depth of his religious convictions, and he answered:

> "Thou shall not kill. Thou shall not steal. Those two commandments were driven into my head ever since I was seven, and then when I reached eighteen I was asked to carry a rifle and was given the power to kill and steal legally. At that point I came to the conclusion that I would have nothing to do with War. I will not take a defense job; I will not contribute to any war organization; and I will seek to live a peaceful life without the help of the state."

In answer to another question, the defendant stated that in his opinion force should be used only when necessary to prevent insane or suicidal acts. The revised form, like the earlier one, asked the defendant whether he belonged to any religious sect or organization. His answer was "No."

On the basis of the information supplied in the revised form, the local board classified the defendant in Class I–A. That classification was upheld by an appeal board, which was advised by a Hearing Officer of the Department of Justice that the defendant "clearly does not have conscientious objections to war by reason of religious training and be-

lief." If that classification has any basis in fact, it may not be set aside here.

I might well begin discussion of the legal issues of this case by restating some premises that are sometimes forgotten. Congress decided in 1948, as it often has before, that male persons of the defendant's age shall be conscripted into an armed force. Congress might have decided that there be no exemptions from conscription, and such a decision undoubtedly would have been lawful. Instead, Congress marked out a few exemptions and deferments, and these are strictly construed. Since all such exemptions and deferments are matters of legislative grace, any potential conscript who claims exemption bears the burden of sustaining his claim. Thus, Congress has decided that the Nation's need of a large force of conscripts outweighs the many personal objections which are often raised to military service. That decision may not be challenged here.

Section 6(j) grants an exemption to any person "who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form." The exemption is clearly qualified by the phrase "Religious training and belief", and that phrase is defined in exact terms:

> "Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."

The defendant in the case at bar stated to his local board that he received religious training "from no one," and that he acquired his belief "by my conscience." He also stated: "I receive no religious instructions from any one." He stated that he belonged to no sect, no religious organization. He did state that he was opposed to war in any form, but he failed to state facts from which

the local board might infer that his opposition bore any relation to his belief in a Supreme Being. The aggregate of all his statements amounts to what the Congress has called "a merely personal moral code."

■ I wish to make clear that I neither grant nor take away any exemption or deferment from this defendant. That task has been assigned by Congress to the Selective Service System, and, in the first instance, to this defendant's local board. My task is to determine whether the challenged classification is grounded upon any basis in fact. And I find that the classification is amply supported by all of the defendant's statements, viewed together, in the revised "Special Form for Conscientious Objector," which is the Government's Exhibit A–9.

I now reach a more troublesome question. The defendant was classified in Class 4–E, now Class 1–O, on the basis of much of the evidence which was before the local board when he was classified in Class 1–A. The defendant urges that no additional information relating to the claimed exemption was placed before the local board between the dates of the two classifications, and that, in the absence of such additional information, the local board was required to retain him in Class 4–E or its equivalent. Both propositions are erroneous.

The defendant's answers in the revised form were not the same as those he had submitted in the earlier form. In each instance the answers varied in form; in at least one instance the answers varied in substance. Certainly, a more elaborate statement of the defendant's attitude toward war, and the basis for that attitude, is contained in the revised form. I do not intend to evaluate and compare the language used in the two forms; that too is a task for the local board. I do find, however, that the facts stated by the defendant in the revised form vary from the facts stated in the earlier form. In the first form, the defendant stated that he was a member of a religious sect or organization;

in the second form, he stated that he was not. In the first form the defendant stated that he has been inspired by his brother and by his brother's friends; in the second form, in answer to the same question, he stated that he had received training from no one. These differences may or may not be material; that is a matter for the local board. However, it is clear beyond doubt that the local board had new and relevant information before it when the defendant was re-classified in Class 1–A.

It is equally clear that the local board might have reclassified this defendant if no additional evidence had been adduced after he was first classified in Class 4–E. Regulation 1625.2 of the Selective Service System provides (in part):

"The local board may reopen and consider anew the classification of a registrant * * * upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification."

■ The facts need not be new facts, like those required for a new trial or reconsideration of a judgment in a court of law. Any facts not considered by the local board before the first classification may later be considered for purposes of a second classification. As the Court of Appeals once commented when considering the case of another defendant:

"Like any other registrant, his classification is subject to reconsideration. It is the duty of the Board to keep up the screening and sorting process of reclassification. No one has a vested right to remain in the classification in which he is once placed." United States v. Domres, 7 Cir., 142 F.2d 477, 479.

The decision in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, does not conflict with this expression of the law. Dickinson claimed a ministerial exemption, but was classified in Class I–A. After the classification, he submitted

**640**

facts which brought him squarely within the statutory exemption. The local board refused to reclassify him, although there was nothing in his file which controverted his claim. That refusal to reclassify was based on nothing more than suspicion and speculation; it was, therefore, unlawful. That is not to say, however, that a local board might not reconsider and reclassify any registrant at any time, and it is well to note that Dickinson's case itself involved an arbitrary refusal to reclassify. In Dickinson's case, in this case, in all cases, it is the last classification which must be measured by the standards of due process. If that classification was reached in accordance with the Regulations, and is found to have some basis in fact, it may not be disturbed by the courts.

'For all the reasons stated, the defendant's motion for a judgment of acquittal at the end of all of the evidence is' denied.