UNITED STATES v. SIMMONS.
No. 11011.

United States Court of Appeals
Seventh Circuit.
June 15, 1954.

Hayden C. Covington, Brooklyn, N. Y., Karl M. Milgrom, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., James B. Parsons, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Defendant was charged with willfully refusing to submit to induction into the armed forces of the United States in violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 462. He admitted that he had refused to submit, but averred that the induction order was void by reason of the invalidity of his selective service classification which denied his claim of exemption from service as a conscientious objector. This appeal followed a judgment of conviction entered by the court sitting without a jury.

We are faced with a situation where repetition of certain basic concepts may not be amiss. The issues before us, subject as they are to exaggerated emotionalism, are difficult for an impartial arbiter since they demand reconciliation of an apparent conflict between a paramount right of freedom of conscience and religion and an equally paramount duty of every individual to defend his sovereign nation. This conflict is ably discussed in United States v. Tetsuo Izumihara, D.C., 120 F.Supp. 36. Congress, as the legislative voice of the sovereign, might have demanded unequivocal support from every person within its jurisdiction when it framed the selective service laws. As an obvious expression of conviction that greater strength lay in the preservation thereby afforded to freedom of conscience than in universal participation in the armed forces, Congress provided an exemption from military service to those who, by reason of their religious training and belief, are conscientiously opposed to participation in war. 50 U.S.

C.A.Appendix, § 456(j). This exemption, however, is an exception to a general statute applicable to "every male citizen" within a defined age group, 50 U.S.C.A.Appendix, §§ 453, 454(a), and is, therefore, a privilege extended by legislative grace. To avail one of this privilege, application must be made to the agency established by the statute, the local board, which is empowered to decide each such claim of privilege, subject to administrative appeal as provided by statute. 50 U.S.C.A.Appendix, § 456 (j).

The task of probing into and intelligently appraising the conscience of another is a difficult and unhappy one; but we should bear in mind that Congress has imposed this onus not upon the courts but upon the local board whose orders "within the respective jurisdictions" are expressly made final "subject to the right of appeal to the appeal boards herein authorized". 50 U.S.C.A. Appendix, § 460(b) (3). See United States v. Adamowicz, D.C.N.D.Ill., 119 F.Supp. 635. Judicial review of such orders is severely restricted. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. Our duty is done if we be solicitous that our decision on the issues before us accords to the individual defendant due process of law without losing sight of the full purpose of the Act which Congress has determined to be in the best national interest.

■ The teachings applicable to the general field of administrative law are of little aid in judicial review of orders issued by the selective service agencies. The phrase "within the respective jurisdictions" employed in 50 U.S.C.A.Appendix, § 460(b) (3) has been interpreted to limit finality of such orders to those which the administrative agency has jurisdiction to make. In the language of the Supreme Court, this jurisdictional question is reached by the courts in any case "only if there is *no basis in fact* for the classification which [an administrative board] gave the registrant." (Emphasis supplied.) Estep

v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427.

■■ Though the scope of judicial review within the "basis in fact" concept lacks exact definition, certain definite conclusions follow from pronouncements by the court in Estep and subsequent cases. Obviously the burden is on the claimant to prove himself to be within the group entitled to claim the privilege. The court reviewing an order denying such a claim of privilege may not weigh the evidence. The selective service file may be scrutinized only for the narrow purpose of determining whether any factual basis supports the classification, and in its scrutiny the reviewing court may not require adherence by the administrative body to the niceties of judicial rules of evidence. When and if the court determines that the contested order rests on a basis in fact, its jurisdiction ends, even though the court be convinced that the order is erroneous. See generally Estep v. United States, supra; Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152; Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L. Ed. 59; Eagles v. U. S. ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308; Eagles v. U. S. ex rel. Horowitz, 329 U.S. 317, 67 S.Ct. 320, 91 L.Ed. 318; Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331.

Defendant contends, on authority of Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, that the denial of a conscientious objection claim has a basis in fact only when the board has procured affirmative evidence which contradicts the representations made by a registrant in his application for exemption, —that the board must make a record to support its order. The Dickinson opinion has been so construed in Weaver v. United States, 8 Cir., 210 F.2d 815, 822–823; Schuman v. United States, 9 Cir., 208 F.2d 801; and Jewell v. United States, 6 Cir., 208 F.2d 770, 771. However, we do not read the decision as authority for this proposition.

Dickinson was convicted of refusing to submit to induction into the armed

forces in violation of an order based on a selective service determination that he was not entitled to a claimed minister of religion classification. After reaffirming the "basis in fact" test of Estep, the court found no factual basis in the record to support the denial of the claimed exemption. The court said, 346 U.S. at pages 396–397, 74 S.Ct. at page 157: "The court below in affirming the conviction apparently thought the local board was free to disbelieve Dickinson's testimonial and documentary evidence even in the absence of any impeaching or contradictory evidence. * * * However, Dickinson's claims were not disputed by any evidence presented to the selective service authorities, nor was any cited by the Court of Appeals. The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. We have found none here. (The court then states that local boards are not bound by traditional rules of evidence and that courts may not apply a test of substantial evidence.) However, the courts may properly insist that there be some proof that is incompatible with the registrant's proof of exemption. * * * when the uncontraverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice." Thus the court says that once a registrant has made out a prima facie case, which is not contradicted, a denial of the exemption claimed is without factual basis. We cannot apply this principle generally to every case without regard to the quality of the proof made by the registrant.

■ Furthermore, this language must be interpreted in the light of the claim and proofs made by Dickinson. Thus, a distinction must be drawn, we believe, between a claim of ministerial status and a claim of conscientious objection status as to susceptibility of proof. Whether a registrant is a minister in the statutory sense, having as his principal vocation the leadership of and ministering to the followers of his creed, is a factual question susceptible of exact proof by evidence as to his status within the sect and his daily activities. No search of his conscience is required. Even though the only tenet of his cult be a belief in war and bloodshed, he still would be exempt from military service if he were, in fact, a minister of religion. Is he affiliated with a religious sect? Does he, as his vocation, represent that sect as a leader ministering to its followers? These questions are determinative and subject to exact proof or disproof.

■ The conscientious objector claim admits of no such exact proof. Probing a man's conscience is, at best, a speculative venture. No one, not even his closest friends and associates, can testify to a certainty as to what he believes and feels. These, at most, can only express their opinions as to his sincerity. The best evidence on this question may well be, not the man's statements or those of other witnesses, but his credibility and demeanor in a personal appearance before the fact-finding agency. We cannot presume that a particular classification is based on the board's disbelief of the registrant, but, just as surely, the statutory scheme will not permit us to burden the board with the impossible task of rebutting a presumption of the validity of every claim based ofttimes on little more than the registrant's statement that he is conscientiously opposed to participation in war. When the record discloses any evidence of whatever nature which is incompatible with the claim of exemption we may not inquire further as to the correctness of the board's order.

■ Conscientious objector cases cannot be rationalized as defendant's argument would have us do and as some courts seemingly have tried to do. Affiliation with a particular religious sect does not *per se* entitle a registrant to conscientious objector status. The duty

imposed on the boards is to determine subjectively and objectively the sincerity of the individual's belief, not the nature of the teachings of any religious faith. Each case must stand or fall on its own facts. Were this not true, the mass conversion of males, eligible for the draft, to particular faiths might be justified merely because of the "hot breath of the draft board" on their necks. United States v. Tetsuo Izumihara, D.C., 120 F.Supp. 36, 41. Although this does not make every member of any sect suspect, the temptation present for those who would evade the draft is a factor which we should not foreclose the boards from considering on a claim of exemption. We could justify doing so under the Dickinson decision only on proof of a prima facie case for exemption, when the only conclusion possible on the record is that the denial of a claim of exemption is arbitrary and capricious. We could, under such circumstances, impose on the board the burden of making a record to support its order.

The uncontroverted evidence in the Dickinson case was that the draftee had been designated by the governing body of his sect, as a full time pioneer minister; that he was the presiding minister over a "Company" encompassing members residing in an area of some 5,000 square miles; that, as presiding minister, he devoted some 150 hours per month to missionary work; that he arranged and presided over some three or four meetings of his "Company" each week; that he instructed prospective ministers, and that his subsistence was derived from the benevolence of his followers and some five hours per week devoted to secular employment. The court found no evidence in the record to contradict this "prima facie" proof of a minister of religion status, and held that this factual proof could not be ignored by the board, in the absence of affirmative evidence to rebut it. The decision does not impose on the boards the burden of rebutting every claim made irrespective of the proof offered by the applicant. So to construe it would be to convert a privilege granted by legislative grace into an absolute right.

Applying these standards, is the order before us arbitrary and capricious, rendering appellant's classification void? We think not. In executing his classification questionnaire (SSS Form 100), appellant did not claim conscientious objector status. He stated that on the basis of "facts set forth in this questionnaire * * * my classification should be I-A." He was given a preliminary classification of I-A, in which he remained for some two and one-half years until June 4, 1951, when he was reclassified III-A (dependency).

On October 22, 1951, appellant was again classified I-A. On October 25, 1951, he requested SSS Form 150 to claim exemption from military service as a conscientious objector (I-O). On October 30, 1951, he was ordered to report for his preinduction physical examination. On the same day he filed Form 150, in which he stated that he was conscientiously opposed to either combatant or noncombatant military service; that his conscientious objection to such service grew out of beliefs acquired through a course of Bible study begun in 1949, under the direction of his sect; that he became a member in November 1949, and that he did not believe in the use of force except under the direction "of Jehovah God." Thereafter, he was given a hearing before his local board, which found the evidence insufficient to require reopening his classification. The appeal board, after submitting appellant's claim to the Department of Justice for investigation and hearing, by unanimous vote, rejected his claim and sustained his classification as I-A.

Defendant contends that the denial of his claim was based solely on the fact that he is a latecomer to his religious beliefs and that he did not assert his claim until some three years after registration, at a time when his induction was imminent. We agree, as an abstract proposition, that the length of time elapsing since one has espoused a faith,

standing alone, will not furnish a decisive basis for denying conscientious objector status. However, we cannot subscribe to the view expressed in Schuman v. United States, 9 Cir., 208 F.2d 801, 805, that the board may never take this factor into account. See Corrigan v. Secretary of Army, 9 Cir., 211 F.2d 293, in which defendant claimed he was converted to conscientious objection to war while listening to orientation instruction given immediately before induction. Espousal of certain beliefs coincident with pressing induction demands, when coupled with other evidence which casts doubt on the sincerity of an individual claimant, may well support an inference that the espousal of the religious belief was motivated not by conscience but by a desire to remain a civilian. We cannot close the door to the selective service boards' use of any valid inference in ruling on classification questions. To do so would disembowel the statute and refute the express congressional purpose in its enactment.

█ The government cites certain negative circumstances which it contends support the classification. Appellant did not assert his claim until some two years after he became a member of Jehovah's Witnesses and more than two and one-half years after he had been classified I-A, on his own statement that such classification was proper. His claim was supported only by his own statement. No other members of the sect appeared in his behalf. Affidavits of no other members were filed in his behalf. Considering his claim in the light of those of other members of the sect, as the board was entitled to do, on the evidence of record, we cannot say that its denial of his claim is without basis in fact. United States v. Dal Santo, 7 Cir., 205 F.2d 429, certiorari denied 346 U.S. 858, 74 S.Ct. 71. The order may well have been erroneous, but on the record before us, excluding reference to the Department of Justice report, we cannot say that it is arbitrary and capricious.

The only evidence in the file not previously referred to is the report of the Department of Justice. Summarizing the F.B.I. investigative file, this report stated that appellant had on three occasions exerted physical violence against, and had abused, his wife, and that, until some seven months immediately preceding the F.B.I. investigation, appellant was reputed to be a heavy drinker and gambler. The Justice Department report stated in part: "The Hearing Officer reports registrant impressed him as sincere but notes that his religious activities are coincident with pressing draft activities by officials and, therefore, recommends a I-A classification. * * * In addition to the fact that his religious activities coincide with pressing induction possibilities, registrant's absorption and sincerity as to his newly found religion is rendered more questionable by his abusiveness and the exercise of physical violence toward his wife. In this connection police records reflect a complaint by his wife as late as January 6, 1952." The point is that these evidentiary factors have a bearing on the question of sincerity. It is immaterial whether we would have concluded that the circumstances mentioned are sufficient to disprove appellant's sincerity. Their presence of record precludes our saying that the challenged order is without basis in fact.

We thus reach the question of whether appellant was accorded due process of law. He contends that the standards of due process were violated in his hearing before the Department of Justice hearing officer and that this vitiates the induction order. No transcript of the proceedings before the hearing officer appears of record. At his trial, appellant testified that he asked that officer for information as to all unfavorable evidence contained in the F.B.I. investigative report; that he was informed that evidence in this report indicated that he had been hanging around pool halls and that he had been questioned about this facet of his behavior; that the hearing officer evaded his request relative to the other adverse evidence contained in his

file, and that this evidence was not made known to him.

Before the trial, at appellant's request, a subpoena *duces tecum* issued to compel the United States Attorney and the Federal Bureau of Investigation to produce this file at his trial. On leave of court, the government moved to quash. Appellant filed an affidavit in opposition to the motion. Therein the contention which forms the basis for our inquiry was advanced, viz., that due process of law requires that a registrant be given a full and fair summary of the unfavorable evidence contained in the F.B.I. report employed by the hearing officer in making his recommendation, and that the report must be produced at a subsequent trial of the registrant for refusing to submit to induction in order to enable the court to determine whether the officer has complied with the procedural requirements. The court granted the government's motion and quashed the subpoena.

Appellant contends that the Supreme Court in United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, established the rule that registrant must be accorded a full and fair résumé of all adverse evidence contained in the F.B.I. file. In United States v. Nugent, 200 F.2d 46, and United ed States v. Packer, 200 F.2d 540, the Court of Appeals for the Second Circuit reversed the conviction of the defendants, holding that refusal of the Justice Department hearing officer to disclose the F.B.I. reports to defendants was a denial of due process of law in the induction process which vitiated subsequent orders to submit to induction into the armed forces. On certiorari the Supreme Court reversed these decisions, saying, 346 U.S. at pages 5–6, 73 S.Ct. at page 994, "We think that the statutory scheme for review, within the selective service system, of exemptions claimed by conscientious objectors entitles them to no guarantee that the FBI reports must be produced for their inspection."

A contention was made that the statute, so construed, was unconstitutional. Reviewing the statutory scheme for se-lective service procedures, the court held that the "hearing" accorded to claimants of conscientious objector status, though it must be more than sham, does not require a formal judicial hearing comparable to a criminal trial. The court said: "Instead, the word [hearing] takes its meaning * * * from an analysis of the precise function which Congress has imposed upon the Department of Justice in [Section 456(j)]. The duty to classify—to grant or deny exemptions to conscientious objectors—rests upon the draft boards, local and appellate, and not upon the Department of Justice. * * The Department of Justice takes no action which is decisive. Its duty is to advise, to render an auxiliary service to the appeal board in this difficult class of cases. * * * [I]n this special class of cases, involving as it does difficult analyses of facts and individualized judgments, Congress directed that the assistance of the Department be made available whenever a registrant insists that his conscientious objection claim has been misjudged by his local board. Observers sympathetic to the problems of the conscientious objector have recognized that this provision in the statute improves the system of review by helping the appeal boards to reach a more informed judgment on the appealing registrant's claims. But it has long been recognized that neither the Department's 'appropriate investigation' nor its 'hearing' is the determinative investigation and the determinative hearing in each case. It has regularly been assumed that it is not the function of this auxiliary procedure to provide a full-scale trial for each appealing registrant. Accordingly, the standards of procedure to which the Department must adhere are simply standards which will enable it to discharge its duty to forward sound advice, as expeditiously as possible, to the appeal board. * * * It is always difficult to devise procedures which will be adequate to do justice in cases where the sincerity of another's religious convictions is the ultimate factual issue. It is especially difficult when these proced-

ures must be geared to meet the imperative needs of mobilization and national vigilance—when there is no time for litigious interruption.' Falbo v. United States, 1944, 320 U.S. 549, [554], 64 S. Ct. 346, 88 L.Ed. 305. Under the circumstances presented, we cannot hold that the statute, as we construe it, violates the Constitution." (Footnotes by the court omitted.) 346 U.S. at pages 7–10, 73 S.Ct. at page 995.

Quotation at length from the Nugent opinion is justified, we think, as demonstrative that the court did not presume to establish rules of procedure for the conduct of Department of Justice hearings. Appellant refers us to the language of the court appearing at page 6 of 346 U.S., at page 994 of 73 S.Ct., "We think the Department of Justice satisfies its duties under § 6(j) when it accords a fair opportunity to the registrant to speak his piece before an impartial hearing officer; when it permits him to produce all relevant evidence in his own behalf and at the same time supplies him with a fair résumé of any adverse evidence in the investigator's report." He contends that by this language the Supreme Court announced the postulate that a fair résumé is a prerequisite to a fair hearing. The government insists, correctly we think, that the only issue before the court, which is pertinent to the question before us, was as to the right to inspect the F.B.I. file and that the last quoted language is *obiter* occurring in approving the procedure followed by the hearing officer in Nugent's hearing.

The government's contention is persuasive when the above quotations are considered together. Had the court intended to prescribe the minimum procedural rules for such hearings, it is not unreasonable to assume that it would have done so expressly in its discussion on the issue of constitutionality. There the court said that the hearing must be more than "sham" but need not be a "litigious controversy." Thus we are told that somewhere between these two extremes lies the line between due process

and arbitrary action. We are told further that the procedure employed by the hearing officer in Nugent's case falls within the realm of due process. It does not follow from this that the Nugent procedure presents the minimum safeguards which will afford the registrant due process. Furthermore, the court indicated that Nugent and Packer had waived their right to object to any failure on the part of the hearing officer to give them a full summary of the evidence because they had failed to request such a summary. 346 U.S. at page 6, note 10, 73 S.Ct. 991. Thus the issue now facing us was not before the court in Nugent.

We are referred to numerous authorities to support appellant's contention. Brief reference to some of them will suffice to dispose of the point. In United States v. Everngam, D.C., 102 F.Supp. 128, the court held that proof on the face of the report of the hearing officer that his recommendation was based on his own belief, not on his appraisal of registrant's sincerity in his professed belief, to be a denial of due process which vitiated any order based thereon. Eagles v. U. S. ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308, approved the use of theological panels to advise the local board with respect to ministerial claims, provided the information received from the panel be placed in the registrant's file and available to him. United States v. Balogh, 2 Cir., 157 F.2d 939, reversed a conviction of a registrant whose classification followed a referral of a claim to what the court found to be an illegally constituted theological panel. In United States ex rel. Levy v. Cain, 2 Cir., 149 F.2d 338, the court held that concealment of the identity of the members of a theological panel from a registrant and adventures of such panel into questions outside of the field of ecclesiastics vitiated an order based thereon. The court in U. S. ex rel. DeGraw v. Toon, 2 Cir., 151 F.2d 778, ordered a serviceman released from military custody where his local board had concealed from him damaging evidence in his selective service file on which his classifica-

tion and induction rested. These authorities are relevant only for the basic postulate on which each decision rests, namely, that a registrant is entitled "to know and confront the evidence" contained in his selective service file upon which his classification is based, U. S. ex rel. DeGraw v. Toon, supra, 151 F.2d at page 779, and to appear before a legally constituted advisory agency which will frame its advice on the standards prescribed by the statute.

In United States v. Bouziden, D.C., 108 F.Supp. 395, the court held the failure of the hearing officer to inform a registrant of the adverse evidence on which his report and the Justice Department recommendation rested to be a denial of due process. And the Nugent case has been construed as requiring a full summary of adverse evidence contained in the registrant's F.B.I. file, i. e., that failure of a hearing officer to give the registrant such a summary is a denial of due process which vitiates all subsequent proceedings in his case. United States v. Evans, D.C., 115 F.Supp. 340. This ruling has been followed in United States v. Edmiston, D.C., 118 F.Supp. 238; United States v. Stull, decided Nov. 6, 1953 (E.D.Va.); United States v. Stasevic, D.C., 117 F.Supp. 371; United States v. Parker, decided Dec. 2, 1953 (D. Mont.); and United States v. Brussell, Nov. 30, 1953 (D.Mont.). In each of these cases, however, the Evans decision has been adopted without analysis or evaluation. To the extent that these decisions hold that the registrant must be given an opportunity to know and rebut adverse evidence in his selective service file, which file must support a classification order if it is to survive judicial scrutiny, they merely restate accepted principles of due process in selective service cases. Since the F.B.I. file is no part of a registrant's selective service file, the holding in the Evans case that only a full summary by the hearing officer will satisfy due process requirements is, we believe, predicated on error in at least two respects. First, the decision is expressly premised on the postulate that, in a trial for the offense of refusing to submit to induction, the government has the burden of proving the validity of the classification on which the induction order is based. We consider this premise wholly inconsistent with the limited scope of judicial review permitted under the principle announced in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. Secondly, we cannot agree, as we have previously pointed out, with an interpretation of the Nugent case as establishing a full summary as an absolute criterion for measuring the legality of the Justice Department hearing.

 The line between "sham" and a "litigious proceeding" should, we believe, be drawn without regard to procedural rules to meet the requirements of basic fairness consistent with the limitation placed on the statutory provision of finality. If the government must point to secret evidence to establish any basis in fact for a particular classification, to evidence which the registrant has been denied an opportunity to know and rebut, we do not doubt that the proceeding is so lacking in basic fairness as to require that the classification be declared void. The point to be emphasized, however, is that in any event the government cannot use the F.B.I. file in a criminal trial. We do not read the Nugent case as requiring anything more than that evidence on which a classification order must find its support must have been called to the registrant's attention during the classification process. Applying these principles, we cannot hold that appellant was denied due process of law. As previously pointed out, the record affords a basis in fact for his classification without reference to the Justice Department's report to the appeal board. In view of this fact, we cannot say that the action of the board was arbitrary.

 Furthermore, it appears that the hearing accorded appellant conformed to those standards of procedure set forth in Nugent to enable the Department "to discharge its duty to forward sound advice to the appeal board." As-

suming *arguendo*, that sound advice is possible only if the hearing officer has heard both sides of the story, the test has still been met. Two types of adverse evidence contained in appellant's F.B.I. file, *i. e.*, evidence of drinking and carousing and evidence of brutality and abuse toward his wife, were referred to in the Department's report to the appeal board. By his own admission, appellant was informed of the first type and was questioned about this conduct. He testified that he informed the hearing officer that he had changed his ways. By his own admission, he and his wife were asked questions relating to his abuse of her. Appellant was present. His wife was present. He was afforded an opportunity to have other witnesses present. Thus, questions were addressed to appellant's witnesses in his presence which were sufficient to inform him of all adverse evidence in the file brought to the attention of the classifying agency, the appeal board. This situation differs only in degree from that before the Supreme Court in United States v. Packer, 346 U.S. 1 at page 7, note 10, 73 S.Ct. 991, at page 995, 97 L.Ed. 1417, where the court said: "Nor was respondent Packer denied his right to be advised of the general nature of any evidence in the FBI report which might defeat his claim. In response to his question, the Hearing Officer told him there was nothing unfavorable in it. The Hearing Officer's report, which was transmitted to the appeal board, corroborates this view. Nothing in the FBI report was transmitted to the appeal board, and thus it was given no indication that the FBI report was unfavorable." A complete summary may well be preferable procedure, but it is not the function of the court to require it as the only proper procedure.

In view of what has been said, the contents of the F.B.I. file were irrelevant to any issue before the trial court and the court did not err in quashing the subpoena. United States v. Evans, D.C., 115 F.Supp. 340, and the line of cases following it are not persuasive authority for requiring production of the F.B.I. file at trials of this nature, because of the basic fallacies in reasoning on which, as we have previously pointed out, those decisions rest.

We do not preclude the possibility of a case of this nature arising in which examination by the court of the F.B.I. file might be necessary if the government is to meet the averment of a denial of due process of law. But this cause does not fall in that category. We should be reluctant to compel disclosure of investigative files in this type of case. As offensive as may be the thought of the nameless, secret, hidden informer, anonymity of persons interviewed is a virtual necessity in this type of case, if the Department of Justice is to be unfettered in its appointed tasks of investigating claims of conscientious objection and of forwarding sound advice to the appeal boards. A holding that these files must be disclosed in every case would effectively tie the hands of draft officialdom, a result which we should be hesitant to promote.

 We must consider briefly a final contention made by appellant. On January 20, 1953, several days after receipt of his notice to report, he submitted to the clerk of his local board a letter from one Charles K. Fetter, M.D., to the effect that his wife was seriously ill and that she was dependent on him for support and care. Appellant testified that he told the clerk he had learned of this condition only on January 16 and requested that his classification be reopened. No action was taken by the board. This refusal of the board to reopen was not, as appellant contends, an abuse of its sound discretion. A classification "may" be reopened after the registrant has been ordered to report for induction on a "written request" supported by "written evidence" of facts not previously considered by the board, only if the board "specifically finds there has been a change" in status "resulting from circumstances over which the registrant had no control." Selective Service Regulation 1622.2, 32 C.F.R. Sec. 1622.2. Ap-

pellant made no written request and submitted no written evidence of facts surrounding his wife's incapacitation on which he relied to support his dependency claim. We cannot say the board abused its discretion.

We conclude that appellant's classification is founded on an adequate basis in fact and that he was not denied due process. The judgment is affirmed.