EAGLES, POST COMMANDING OFFICER, *v.* UNITED STATES ex rel. HOROWITZ.

No. 58. Argued November 21, 1946.—Decided December 23, 1946.

*Irving S. Shapiro* argued the cause for petitioner. With him on the brief were *Solicitor General McGrath* and *Robert S. Erdahl.*

*Meyer Kreeger* argued the cause and filed a brief for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This is a companion case to *Eagles* v. *Samuels,* No. 59, decided this day, *ante* p. 304. Certiorari also brings it here from the Third Circuit Court of Appeals. That court followed the same procedure here as it did in *Samuels'* case; it reversed the District Court which had dismissed the writ of *habeas corpus* brought on behalf of Horowitz, and remanded the cause to the District Court with directions to discharge him from military custody. 151 F. 2d 801.

It appears that after the remand Horowitz was enlarged upon a recognizance as permitted under our rules. Rule 45. The suggestion that the case is therefore moot is without merit for the reasons stated in Samuels' case.

Horowitz registered pursuant to the Selective Training and Service Act of 1940, as amended, early in 1941 and filed a questionnaire stating he was a college student preparing for a career as a psychiatric social worker. At the time, he asked for a deferment in induction until February, 1943, saying that "if you take me now, you practically negate my possibilities to attain the position I seek in life, namely, a psychiatric social worker." Shortly after he was physically examined and found qualified for military

service, he advised the local board that he had been enrolled in the Rabbinical Seminary of America, a recognized theological school. On July 1, 1941, he was classified I-A. The board of appeal likewise gave him that classification in August, 1941.

Meanwhile, he claimed exemption under § 5 (d) of the Act. The basis of his claim was the representation that he was a student in a recognized theological school for rabbis and was preparing for the rabbinate. In an affidavit he stated that he had not disclosed his intention to become a rabbi because he had no "concrete facts" to present, only "hopes." In November, 1941, the local board classified him IV-D, which classification he retained until May, 1944. In 1942 he filed an occupational questionnaire with the local board, stating that he was taking a course in rabbinical studies at the seminary and also a bachelor of social science course at another institution which he hoped to complete in 1944. He listed himself as a social worker.

In April, 1944, the city director of Selective Service reviewed the file and requested Horowitz to appear before an advisory theological panel. He appeared before a panel and there was a hearing. The panel stated that all students in this seminary were not necessarily preparing for the ministry and that each individual case should be separately appraised.[1] It concluded that his attendance at the seminary had been motivated by a desire to secure a basis for exemption under the Act. This was based on his declared intention early in 1941 to be a social

---

[1] The approach of the panel to the question is shown as follows in its statement:

"Orthodox tradition has always encouraged advanced study of talmudic literature, both privately and at academies instituted for that purpose, irrespective of the specific occupational objectives of those engaged in such study, and all courses offered by these academies are open to qualified students without regard

worker, inconsistencies in his explanation of his failure to refer to the rabbinate at that time, his indifferent and unsystematic manner in preparing for that professed objective, and an appraisal of his reliability and candor. The transcript of proceedings before the panel and later the report were transmitted to the local board by the office of the city director of Selective Service with a request to the board to reopen and reconsider his classification. The report made by the panel was not signed. Moreover, the report was headed "Confidential Statement for the Record." The local board was advised by the city director's office that, while it should give careful consideration to the recommendation of the panel, determination of the classification must be made by the board itself or by an appeal agency.

Horowitz was immediately reclassified as I–A. He asked for a hearing which was granted. It appears that the panel which interviewed him and rendered the report

---

to the individual student's specific intention to prepare for a career of service in the rabbinate.

"Thus, a student ultimately intending to enter business or a profession, or some non-rabbinic activity in the field of religion, may be enrolled in the same courses attended by other students who are specifically concerned with preparation for the rabbinate. It is, therefore, essential for purposes of Selective Service classification to determine in each individual case the purpose which the registrant has in mind in pursuing his course of study.

"Moreover, the fact that the religious tradition in question does not attempt to distinguish between the serious student of talmudic literature and the student preparing for a professional career in the rabbinate, tends to make it extremely difficult for school officials, ministers, and others identified with that tradition, to have and express an objective judgment in such matters.

"To the extent that the distinction is understood, there is a tendency to accept at face value assertions made by the registrant and members of his family and to resolve any doubt in his favor, where it is at least apparent that he is a serious and pious talmudic student."

was composed of three prominent Jewish laymen but no rabbi. Whether that was the cause does not appear, but the board, as a result of the hearing, referred the file to a rabbi for another advisory recommendation. The rabbi recommended that Horowitz be classified IV–D. The local board gave him that classification in June, 1944. In August, 1944, the local board held another hearing. Horowitz was present and was examined. The board concluded that he should be in I–A and so classified him, stating as its reason that he became a student in the rabbinical school after he had registered under the Act. He requested and was granted another hearing, at which he submitted additional evidence. The local board refused to change the classification. On appeal the board of appeal classified him as I–A.

On two subsequent occasions Horowitz asked that his classification be reopened and submitted additional evidence. The board was unpersuaded and refused to re-open the classification. The office of the city director advised the boards that the panel which interviewed Horowitz was composed solely of laymen and that, if by virtue of that fact the board of appeal desired to reconsider the case, to inform the office. Both the local board and the board of appeal replied that there was no occasion for reopening the classification. The board of appeal stated that it had "once again unanimously agreed that the registrant's status does not warrant a IV–D classification." Early in 1945 Horowitz was inducted into the Army.

Horowitz relies upon affidavits and statements from various people concerning the *bona fides* of his professed desire to become a rabbi, on a statement made when he graduated from the public schools in 1932 that that was his ambition in life, on the fact that he stated in 1936 that his first vocational choice was the rabbinate, and on

all of his subsequent activities which, he asserted, fitted into that pattern. On the other hand, it does appear that in 1937 his first vocational choice was teaching, his second the rabbinate. Furthermore, as already noted, his professed objective stated to the local board early in 1941 was social work. And he in fact entered the seminary shortly after he had passed his physical examination and qualified for military service. These circumstances alone make his claim to exemption colorable. Certainly we cannot say that the action of the board of appeal in finally classifying him as I–A was without any support in the evidence.

The question remains whether there was anything in the administrative procedure which vitiated Horowitz' classification. What we have said about the use of a theological panel and the range of its inquiry in *Eagles* v. *Samuels, supra,* need not be repeated here. There is nothing in the present case which makes for a different result. We can no more conclude here, than in Samuels' case, that the board abdicated its function. It first followed the panel's recommendation. But its mind was not closed, as evidenced by the fact that it later sought the advice of a rabbi and followed his recommendation. And when it returned to its earlier position, it proceeded on the ground that the basic defect in Horowitz' case was the shift in his position in 1941 after he had registered. The record shows indecision by the board but no subservience to the panel. As respects the fact that the panel's report was unsigned, only a word need be added. Horowitz, like Samuels, appeared in person before the panel and saw its members face to face. At no time does it appear that he sought the identity of the members and was refused the information.

The essential procedural differences between this case and *Samuels'* are two—it appears that this panel was composed entirely of laymen; and its report was not only

unsigned but marked confidential for the file. The first objection carries little weight. These laymen were prominent citizens of the Jewish faith. There is no showing that they were of a sect hostile to Horowitz. There is nothing to impeach their integrity or to suggest that they were not qualified to serve in the expert role assigned to them.

The fact that their report was marked confidential is given great emphasis. It is argued that although the use of a theological panel may be authorized, there is no warrant for clothing its action in such secrecy.

The regulations, indeed, prescribe that no information in a registrant's file shall be confidential as to him or any one having written authority from him. Section 605.32 (a), 8 Fed. Reg. 2641, 9 Fed. Reg. 9190. But the difficulty here is that it is not shown that the panel's report was in fact treated as confidential by the local board. It is not shown that Horowitz sought and was denied access to the report. Nor is it shown that when Horowitz examined the file the report was not made available to him. If those were the facts, we do not doubt that Horowitz' counsel would have established them at the *habeas corpus* hearing. We find no command to the local board to keep the report confidential. We cannot presume that the board violated the regulations. Yet that is in effect what we are asked to hold. Horowitz, like Samuels, points to possibilities of abuse in the use of the panel. But like Samuels he fails to establish prejudice in his case. The judgment below must therefore be

*Reversed.*