## UNITED STATES v. MANSAVAGE.

### No. 9823.

United States Court of Appeals
Seventh Circuit.

Dec. 27, 1949.

Hayden C. Covington, Brooklyn, New York, Karl M. Milgrom, Chicago, Ill., 'for appellant.

Otto Kerner, Jr., U. S. Atty., John A. Looby, Jr., Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, DUFFY and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

Appellant, John Mansavage, was indicted for violation of Section Eleven (11) of the Selected Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 311. The indictment charged that defendant became a registrant, under the Act, with Local Selective Service Board No. 1, Portage County, Stevens Point, Wisconsin; that he was classified in class 1-A and was duly ordered to report for induction by said local board; that he wilfully, knowingly and feloniously neglected and failed to perform the duty of submitting to induction, required of him by the provisions of the Selected Training and Service Act of 1940 and the rules and regulations thereunder. He pleaded not guilty, and demanded a jury trial. After a verdict of guilty, he was committed for a period of one year and one day.

Much of the argument presented on appellant's behalf in this appeal seeks to reverse the judgment of the District Court because of alleged deficiencies, and even illegalities in the proceedings before the local board. Consequently we propose to review, as briefly as possible, the complete selective service file of the appellant as disclosed in the record.

The defendant, John Mansavage, registered under the Selected Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq., on February 16, 1942 with Local Board No. 1, Stevens Point, Portage

County, Wisconsin. In his registration card, he stated that he was self-employed on his father's farm at Plover, Wisconsin. His selective service questionnaire was filed on May 21, 1942. In it he stated that he was born February 27, 1921; that his social security number was No. 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; that his education consisted of eight years of elementary school; that he was single; that he was then working as a farm laborer and had ten years experience in such employment; that his average earnings were about $40 per month; that his job was to prepare soil, plant and take care of crops and harvest them; that he took care of cattle and horses; that he was regularly working for Anton Mansavage; that he had no other business or work; that he was a hired manager living on the farm and personally responsible for its operation; that 67 of its acres were devoted to various crops; that its livestock consisted of 12 cows, 2 horses and 15 chickens; that he had not worked at any other occupation for the past 5 years; that his usual occupation and that for which he was best fitted was farming; that he was not licensed in a trade or profession; that he prefers farming work; that he had continuously served as a minister of Jehovah's Witnesses since August, 1936; that by reason of his religious training and belief he was conscientiously opposed to war in any form; that he believed his classification should be 4-D (Minister).

On February 21, 1942, the defendant had executed the special form for registrants claiming to be conscientious objectors. He stated therein that he was conscientiously opposed by reason of religious training and belief to participation in war in any form and to participation in any service which is under the direction of military authorities.

The Bible, he stated, was the nature of his belief and he set down on an attached sheet numerous biblical quotations. His training and belief came from study since 1930 of publications of the Watchtower Bible and Tract Society, together with the Bible, which he studied daily.

He was engaged, he said, in house to house witness work of Jehovah since 1936; that his sect was Jehovah's Witnesses of which he became a member in 1936 through Watchtower publications; that the church he customarily attended was Odd Fellows Hall, Stevens Point, Wisconsin, and individual homes; that the pastor or leader was Frank Laszewski, Route 4, Stevens Point, Wisconsin; the names of David Mansavage and John Mansavage (the registrant) both of Plover, Wisconsin, were also given as pastor or leader.

On July 24, 1942, the local board classified the defendant as a conscientious objector, Class I-A-O and notified him to that effect.

On July 30, 1942, he filed with the local board his affidavit stating that he was an ordained minister affiliated with the Sect of Jehovah's Witnesses, and actively engaged in preaching the gospel. He requested a hearing before the local board.

Defendant was given a personal hearing by the local board on August 11, 1942. A memorandum of what took place was prepared and signed by a board member. It recited defendant's request for classification as an ordained minister, it summarized defendant's statements as to his work on his father's farm, his part-time employment in a lumber yard, his family status and concluded that defendant was placed in Class 4-E as a conscientious objector by unanimous vote of the board.

On August 20, 1942, defendant appealed from the 4-E classification and insisted that he was an ordained minister since 1936.

Defendant's file and cover sheet thereof was forwarded to the Board of Appeals No. 8, Merrill, Wisconsin, on August 28, 1942.

The Appeals Board, pursuant to the provisions of the Selective Service and Training Act of 1940, referred the defendant's case to the Department of Justice for investigation and hearing, on September 18, 1942. More than two months later, on November 30, 1942, after completion of its investigation and a hearing attended by the defendant and his brother rendered its report. It recommended that the conscientious objections of the defendant registrant be sustained, and he was placed in Class IV-E by a vote of 4 to 0.

An anonymous letter, signed "Several Disgusted Citizens of Plover" was received

by the local board on February 23, 1943. No action was taken on the letter—it was merely placed in defendant's file.

On March 18, 1943, a supplementary agricultural questionnaire was forwarded to the defendant by the local board. He executed and returned it; stated that he was working at home; that his duties were to operate the farm; that he had also worked during the last 12 months as a truck driver.

On March 31, 1943, defendant again appeared before the local board and requested a reclassification in 4-D. A memorandum of this hearing was prepared by a member of the local board and placed in defendant's file. Following this hearing he was continued in Class IV-E.

On April 7, 1943, defendant withdrew his claim as a conscientious objector to either combatant or non-combatant military service, and requested that no further consideration be given by Selective Service Boards to any statements made by him relating to conscientious objections. Defendant claimed that he did this because he was advised by the hearing officer of the department of justice at Madison, Wisconsin. He claims that officer told him: "You told me that you were a conscientious objector. The Board could not give you a IV-D for that reason." The defendant's statement is: "He advised me to withdraw my claims as a conscientious objector so I could get a IV-D classification from the local board. That is why I did it."

The defendant was given a further hearing by the local board on April 8, 1943. A memorandum of the hearing was prepared by a member of the board. The defendant was classified as a farmer 2-C.

On February 26, 1944, defendant filed a Supplemental Agricultural Questionnaire stating operating the farm was his chief duty; and that besides strictly farming, defendant did logging work all winter.

At request of local board on March 16 and 30, 1944, reports were submitted to local board by county agents recommending that defendant remain on the farm as 100% manpower equivalent thereon. Defendant was continued in Class 2-C on April 14, 1944 and November 1, 1944 by unanimous vote.

On October 27, 1944, defendant by letter answered questions pertaining to status of the farm.

On January 22, 1945, defendant filed a supplemental agricultural questionnaire disclosing that in addition to his farming duties defendant preached for 1½ hours per day.

On March 27, 1945, a report of preinduction physical examination reveals subject was qualified for military service, and defendant's occupation was then listed as farming and working in lumberyard.

On March 29, 1945, the County War Board made written report that defendant is necessary to, regularly engaged in his agricultural occupation. On October 30, 1945, defendant filed with the local board a farm statement stating he was presently working on the farm * * * and defendant was continued in Class 2-C by the local board on May 2, and November 14, 1945. On March 4, 1946 defendant filed a supplement to agricultural questionnaire claiming continued employment as a farm laborer and listing no other work in a space provided for such additional information.

On March 19, 1946, county agent reported that in making his routine check "found John at Lumber Yard. Work on farm done up. He was not able to tell gross income for 1945." No man power equivalent on the farm was then listed in the agent's report for defendant.

On April 3, 1946, the local board classified defendant in Class IV-E. At defendant's request, he had hearing before the local board about his classification on April 17, 1946. A memorandum of this hearing signed by a member of the local board, was placed in defendant's file. This memorandum states that defendant at the hearing requested a 4-D classification only; that subject had submitted a form 45-W, supplement to agricultural questionnaire but not completed; that defendant said he did chores on the farm in the morning and worked the rest of the day at the Cash and Carry Lumber Co., Plover, Wisconsin; that defendant could or would not furnish

the total income for 1945; that the local board after reviewing the information in defendant's file voted 3 to 0 to classify defendant in Class I-A. The minutes of the board disclose that defendant was so classified and notified.

On April 25, 1946, defendant appealed his classification in writing. In this written statement defendant claimed that the board refused to investigate and permit defendant to explain his status as a minister; that since 1936 defendant has been engaged in preaching the gospel with the help of publications of the Watchtower Bible and Tract Society; that the society recognizes him as an ordained minister and has presented him with an identification card saying so; that at present 39½ hours of defendant's time is devoted to the preaching activity; that besides the actual time in the field 60 to 100 hours of defendant's time is devoted to study per month; that a thorough investigation was requested; that defendant asked to be placed in Class 4-D.

On April 26, 1946, defendant's case was referred to the Board of Appeals, No. 1, Stevens Point, State of Wisconsin, the local board cover sheet and complete file, including all the documents previously referred to, were forwarded to the Board of Appeals.

On June 6, 1946, the Board of Appeals classified defendant 1-A and defendant was so notified by the local board on June 14, 1946.

On June 14, 1946, the local board ordered the defendant to report for induction on June 27, 1946. Defendant was ordered to report to the local board at 219½ North 3rd St., Stevens Point, Wisconsin, at 8:00 a.m. The order specified, among other things, "the local board will furnish transportation to an induction station. You will there be examined, and, if accepted for training and service, you will there be inducted into the land or naval forces."

The defendant reported to the local board and proceeded to the Armed Forces induction station at Chicago, Illinois. There he proceeded through all the physical and mental examinations and was found physically qualified for general military service. De-fendant was then interviewed concerning historical and personal information having no bearing on qualifications. Immediately prior to the time defendant was to be inducted, defendant left the induction station and returned to his home in Wisconsin. Defendant was not present and did not submit to induction. Report of physical examination and induction pertaining to defendant made by Colonel F. E. Swanson, United States Army, in charge of induction station, showed defendant's disposition as "Administrative reject, eloped prior to completion of induction."

Defendant admitted from the stand that when it came to taking the actual induction, he left. Defendant admitted to Federal Bureau of Investigation agents, that he had no intention of completing his induction but proceeded with the examination hoping that he would be found physically unfit.

The trial court put into the record in this case the following statement: "I have read the record of the Registration Board, together with the record of the Appeal Board in connection with this matter and I am satisfied there is a substantial basis in fact to support the classification."

On this appeal defendant advances several so-called propositions of law which invalidated the order upon which the indictment herein was based.

In the first he asserts that the failure of the local board to reduce to writing evidence offered by the defendant upon his personal appearances "had the effect of depriving the Board of Appeals of evidence and thereby invalidated the order supporting the indictment."

With reference to appearances by registrants before their local boards. Section 625.2 of the Selected Service Regulations provides in part: " (b) * * * The registrant may present further information as he believes will assist the local board in determining his proper classification. Such information shall be in writing, or, if oral, shall be summarized in writing, and in either event shall be placed in registrant's file. The information furnished should be as concise as possible under the circumstances."

■ In this case, as we have already pointed out, such memoranda or summaries were prepared by one or the other of the board members after each appearance of defendant and were placed in his file. In a fairly close examination of the facts argued, on this appeal, by the defendant we have found that all such facts as had any substantial bearing on defendant's status can be found in or ascertained from the documents in his Selective Service file.

The summaries prepared by the local board in this case satisfied the requirements of the Selective Service Regulations. Niznik v. United States, 6 Cir., 173 F.2d 328, pp. 333–334; Peterson v. United States, 6 Cir., 173 F.2d 111, 114.

The second proposition advanced on behalf of defendant is that "the denial by the local board of a full and fair hearing to the defendant upon his personal appearances invalidated the order supporting the indictment." The proposition is then subdivided into distinct charges: 1st that the board failed to consider all the evidence in defendant's Selective Service file, and the evidence offered in his personal appearance as though he had never before been classified; and 2nd that the local board failed to consider and rejected evidence of the defendant because of prejudice against Jehovah's Witnesses.

■ In our opinion this proposition has no factual basis whatsoever. Any reasonable person, considering the entire Selective Service file of this defendant, must be impressed, as we were with the consideration and care with which the local board and the boards of appeal treated him. To claim, on this record, that the members of the local board or of the boards of appeal were prejudiced against Jehovah's Witnesses is simply to assert an untruth. The proposition requires no further discussion.

It is next claimed by defendant that the advice given him by a federal officer to withdraw his claim as conscientious objector so that his claim for exemption as a minister could be considered, and secondly that the receipt and consideration of an anonymous letter by the local board invalidated the order supporting the indictment.

Defendant's claim as a conscientious objector was withdrawn on April 7, 1943, just before he was classified as a full-time farmer.

■ About three years later when defendant was found engaged in work other than farming, he was again classified as a conscientious objector by the local board. Again he demanded a personal appearance, and it was on this occasion he was first classified in Class 1-A. If a government agent had given him bad advice, he had three years in which to make inquiry and get better. Ignorance of the law is no excuse. If false advice was deliberately given to delude him into abandoning his claim as a conscientious objector, it would not invalidate the indictment.

Manifestly if the defendant, in good faith, believed that the withdrawal of his claim as a conscientious objector would lead to his classification as a minister of religion, he must have learned of his error in April, 1943 when he was classified as a farmer.

■ It is true, as we have already told, that an anonymous letter in reference to defendant and his brothers was received by the local board. It is not true that the board gave it consideration—it was merely filed. No action was taken on it.

It could have no possible effect on the validity of the indictment.

In his next proposition defendant claims that notations on the cover sheet of his file were opinions directed to the Board of Appeals, were violative of the regulations and invalidated the order supporting the indictment. In his argument in support of this proposition, he furnishes no data as to the notations complained of. He does cite rule 627.13(b) of Selective Service Regulations which provides "the local board should be careful to avoid the expression of any opinions concerning information in registrant's file and should refrain from including any argument in support of its decision."

■ We can find nothing in this defendant's Selective Service Record wherein the local board or any member thereof expressed any opinion concerning information in defendant's file, certainly they included no

argument in support of their decision. The point is not well taken.

The record of this defendant shows that after his registration under the Selective Service and Training Act, he did for more than a year attempt to persuade his local board that he was a minister of religion and entitled to be classed IV-D. But on April 8, 1943 he did procure, at his own request, a hearing as a result of which he was classified in Class II-C as a full-time farmer. This appears to be the first action of the local board from which he did not appeal. For the next three years, or until March, 1946, the record shows no conflict or altercation between the local board and the defendant. It is entirely silent on such matters as minister of religion or conscientious objector.

But when, in March, 1946, defendant was found violating the regulations of Selective Service the apparently forgotten arguments were renewed. He was again classed as a conscientious objector but on personal appearance was classified in Class I-A. Again he appealed and again the Board of Appeals, by unanimous order, confirmed the classification of the local board. It should not be overlooked that defendant's final classification came as a direct result of his disregarding the obligations placed upon him as a full-time farmer under the Act.

So far as the trial is concerned the defendant makes three points:

First, that he is not guilty of refusing to submit to induction because he never reached the induction room.

Second, that the trial court erred in excluding the testimony of the chairman of the Board of Appeals, and

Third, that the trial court erred in refusing to permit the jury to hear and consider the testimony of defendant which would show that a full and fair hearing was denied both by the local board and the Board of Appeals.

■ The first objection is completely answered by Billings v. Truesdell, 321 U.S. 542, 557, 64 S.Ct. 737, on page 745, 88 L.Ed. 917, where it is said: "He who reports to the induction station but refuses to be in-ducted violates § 11 of the Act as clearly as one who refuses to report at all. * * * The order of the local board to report for induction includes a command to submit to induction."

■ As to the second objection, there is absolutely no showing that the Chairman of the Board of Appeals would, if permitted to testify, give evidence tending to show that the Board acted in an arbitrary or capricious manner. The offer was properly rejected.

■ So far as the third point is concerned, it seems to us that Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59, is decisive. In that case it is said, 332 U.S. on pages 448–449, 68 S.Ct. on page 117: "Petitioners are entitled to raise the question of the validity of their selective service classifications in the proceeding. They have exhausted their remedies in the selective service process, and whatever their position might be in attempting to raise the question by writs of habeas corpus against the camp custodian, they are entitled to raise the issue as a defense in a criminal prosecution for absence without leave. Gibson v. United States, 329 U.S. 338, 351–360, 67 S.Ct. 301, 307–312 [91 L. Ed. 331]. The scope of review to which petitioners are entitled, however, is limited; as we said in Estep v. United States, 327 U. S. 114, 122–123, 66 S.Ct. 423, 427, 90 L.Ed. 567: 'The provision making the decisions of the local boards "final" means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant.' Compare Eagles v. United States ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, [91 L.Ed. 308], and Eagles v. United States ex rel. Horowitz, 329 U.S. 317, 67 S.Ct. 320 [91 L.Ed.

318], in which a similar scope of review is enunciated in *habeas corpus* proceedings by registrants claiming to have been improperly inducted."

Other objections to the trial court's failure to submit to the jury instructions requested by the defendant appeared to have been waived. They are not argued in this appeal.

The judgment of the District Court is therefore affirmed.