225 F.2d 71
 UNITED STATES of America ex rel. Justin K. McCARTHY,
v.
Harold H. COOK, Lt. Col., U.S.A., Commanding Officer, United
States, Army& Air Force Induction Center,
Schuylkill Arsenal, Philadelphia, Pa.
 No. 11515.
 United States Court of Appeals Third Circuit.
 Argued April 5, 1955.
Decided May 23, 1955.
Rehearing Denied Aug. 15, 1955.
 
 1
 Thomas D. McBride, Philadelphia, Pa., (John Rogers Carroll, Michael von Moschzisker, Philadelphia, Pa., on the brief), for appellant.
 
 
 2
 W. Wilson White, U.S. Atty., Philadelphia, Pa., for appellee.
 
 
 3
 Before BIGGS, Chief Judge, HASTIE, Circuit Judge, and WILLSON, District judge.
 
 
 4
 WILLSON, District Judge.
 
 
 5
 Appellant Justin K. McCarthy was inducted into the army on November 23, 1954, pursuant to the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq. His induction was involuntary and under protest. On the day of his induction he filed an application for a writ of habeas corpus in which he sought his discharge from service. A full hearing was had in the district court on the rule to show cause why the writ should not issue. The district judge discharged the rule and denied the writ. This appeal followed. The district court will be affirmed.
 
 
 6
 The evidence taken in the district court discloses the facts. They are not in dispute. In the district court and on this appeal, appellant asserts his induction was illegal because:
 
 
 7
 1. Local Draft Board No. 114, Northampton County, Pennsylvania, was illegally constituted.
 
 
 8
 2. He was denied procedural due process in that the board refused to give him a personal hearing as requested in writing on February 9, 1952.
 
 
 9
 3. He was classified I-A and while in such classification reached and passed the twenty-sixth anniversary of his birth and therefore the local board had no further jurisdiction to direct that he be inducted.
 
 
 10
 At the outset it is important to refer to the extent of the permitted judicial review of this type of case. The Supreme Court in Dickinson v. United States, 346 U.S. 389, at 394, 74 S.Ct. 152, at page 156, 98 L.Ed. 132, said:
 
 
 11
 'The Universal Military Training and Service Act does not permit direct judicial review of selective service classification orders. Rather the Act provides, as did the 1917 and 1940 conscription Acts before it, that classification orders by selective service authorities shall be 'final.' However, in Estep v. United States, (1946, 327 U.S. 114, at pages 122-123), (66 S.Ct. 423, at page 427, 90 L.Ed. 567), a case arising under the 1940 Act, this Court said: 'The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."
 
 
 12
 The Supreme Court has also held that an inductee seeking a discharge by habeas corpus has the burden of showing that he was prejudiced by the procedure adopted and followed by the selective service officials. The range of inquiry is limited. The court does not sit in review. It is the impact of the procedure on the person seeking the writ that is crucial. Whatever potentialities of abuse a particular procedure may have, the case is at an end if the challenged proceeding cannot be said to have been so corrupted as to have made it unfair. Eagles v. United States ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308, and Eagles v. United States ex rel. Horowitz, 329 U.S. 317, 67 S.Ct. 320, 91 L.Ed. 318.
 
 
 13
 As the facts established in the district court are conclusive because uncontradicted, they are reviewed with the purpose primarily to inquire whether McCarthy established prejudice in his case.
 
 
 14
 Appellant was born August 28, 1927, at Bethlehem, Pennsylvania. He is a graduate of Lehigh University and of the law school of Columbia University. In 1945, appellant joined a naval reserve unit and entered training as a midshipman. His training duty as a midshipman ended in February, 1947. He registered under the 1940 Selective Training and Service Act on March 27, 1947. He was then in his twentieth year. Under the 1948 Act, now Universal Military Training and Service Act, he registered September 10, 1948, with Local Board 114, Northampton County, Pennsylvania. After returning his questionnaire he was classified I-D on August 11, 1949, which was based on his participation in the naval reserve. Appellant re-entered the naval reserve in September, 1948, but his re-entry did not qualify him for I-D because a condition precedent under the 1948 Act, effective June 24, 1948, for a I-D, required a minimum of ninety days of active duty in one of the armed services, that is army, air force, navy, etc., which appellant had not had. See 32 C.F.R. § 1622.13. At the date of the I-D classification, appellant was about to enter his senior year at Lehigh University. At that time he made no request to appear before the board, nor did he otherwise communicate with it. The I-D classification remained as such through 1950 and 1951. At the hearing in the district court, appellant acknowledged familiarity with the selective service regulations, and of the fact that under the 1940 Act his classification I-D was proper, but that under the 1948 Act it was improper. When the exact time that this realization came to appellant was not clearly shown. In February of 1952, while appellant was in his second year in law school, and after returning a questionnaire, he was given a I-A classification, the notice of which was dated February 5, 1952. On February 9, 1952, appellant wrote his board acknowledging the notice classification, stating that he was a student in the law school at Columbia, and stating that he expected to attain his degree in June of 1953. He appealed from his I-A classification and also said in his letter: '* * * respectfully request that I be afforded the opportunity of appearing in person before your Board, No. 114.' Appellant received no response from the board with regard to his request to appear. However, he very shortly did receive copies of SSS Form No. 109, one from Lehigh and one from Columbia. These forms were copies of a notice from each university to the draft board as to his student status. The record does not indicate that appellant requested that the universities prepare and send Form 109 to the board. The next communication from the board to appellant was a notice of February 27, 1952, placing appellant in Class II-S 'until 6-52.' In between his I-A and his II-S classifications, on February 11, 1952, Columbia by letter informed the board that appellant was a student and urged that he be given a student's deferment of II-S. Appellant did not appeal from the II-S classification, nor communicate with the board. The next notice from the board to appellant was on August 4, 1952, notifying appellant that he had been placed in Class II-S 'until 6-53.' As to this second II-S classification, appellant testified that he had sought the advice of the advisor to veterans at Columbia. He filled out a request form and '* * * dropped it in the box which was then picked up and processed by the registrar, which sent out a Form 109 again, * * *.'
 
 
 15
 It is noted that the 1948 Act required that student classifications be reviewed annually. Appellant did not appeal from the second II-S, nor otherwise communicate with the board with regard thereto.
 
 
 16
 On May 28, 1953, appellant was classified I-A. On June 1, 1953, appellant wrote the board a two paragraph letter in which he acknowledged notice of his classification I-A, but said that he would not be eligible to graduate from Columbia until the first week of October, 1953; that he was not eligible to take the examinations for admission to the Bar of Pennsylvania without his degree; and that the registrar had assured him that he would forward a Form 109 as soon as his grades were computed and his scholastic standing determined, which would take place in the near future. The second paragraph of this letter requested the board to advise appellant whether he was entitled to take an appeal from the I-A classification until such time as Columbia informed the board as to his status or what procedure should be observed to preserve appellant's student classification '* * * until I receive my law degree in October, 1953.'
 
 
 17
 This letter was not answered by the board and on June 17, 1953, the board mailed an induction notice. On June 22, appellant wrote the board requesting a postponement of induction to enable him to complete credits for his degree. In the meantime, appellant had entered summer school at Wisconsin for the purpose of making up his credits. The board first granted a five day and then a sixty day postponement of induction. While in Wisconsin, appellant first learned from his father of the postponement of his induction. Appellant's father was the government Appeal Agent. On July 6, 1953, from Wisconsin, appellant wrote another letter to the board. He requested that his case be reopened and again considered by the board. Among the reasons advanced for reconsideration were that he had received improper advice from the government Appeal Agent; that he had been denied the right to appear in person; that he was denied the right of being classified I-S by reason of the failure of the Appeal Agent and the board to properly advise him; that the board acted arbitrarily and capriciously in classifying him I-A without waiting a reasonable time to hear from Columbia; that the board acted arbitrarily and capriciously in classifying him I-A without allowing him thirty days in which to enlist or secure essential employment; and lastly, and for the first time, appellant asserted that the board was without jurisdiction. In the concluding paragraph of his letter, appellant, nevertheless, requested the board to '* * * restore me to my former and appropriate classification, namely II-S until I graduate from Columbia Law School in October, 1953, or I cease to satisfactorily pursue my course of study at said Institution; or be classified in Class I-S pending the receipt of my graduate degree in October 1953.' Appellant then said: '* * * If denied these rights I * * * request that you forward this request to the proper Appeal Board * * *.' As the board made no reply to the July 6 letter, appellant on August 18 again wrote the board appealing from any definitive action taken by the board in his case and again requesting a personal appearance. On September 1, 1953, appellant received notice that his previous induction order was postponed indefinitely by authority of the State Director. On direct examination, appellant said that early in September he received a letter from the local board notifying him that his file was at the appeal board in accordance with his request and that on its return he would be informed of 'their decision.' From the testimony it appears that the foregoing information was contained in the board's letter of September 9, 1953. Then on September 16, in another letter to the board, appellant took the position that he had not asked that his folder be sent to the appeal board but that he had been endeavoring for more than two months to have his case reopened to afford him the opportunity to appear in person before the board, and also in this letter, appellant asserted that he had never been legally classified after September 10, 1948 and requested that his letter be made part of his folder. On November 20, 1953, appellant was classified I-A by the Area Appeal Board. On November 30, appellant wrote Col. Henry M. Gross, State Director. He mentioned the lack of a previous hearing and cited decisions of the United States courts to the effect that registrants have the right to appear in person and that a local board may not deny such right. The record shows no reply from the State Director to appellant's letter, but it was followed on January 7, 1954 by a notice from the board to appellant to appear for a hearing set for January 12. On January 9, appellant by letter to the board acknowledged the notice of the hearing. In his letter, after quoting the notice of the board, appellant says: '* * * Please let me have by return mail unequivocal answers to each of the following questions, to wit: * * *.' Then appellant asked eight questions[1] and concluded: 'Without full and complete answers to each of the above questions it will be utterly impossible for me to adequately discuss and fully present my reasons for a reclassification.'Without answering the interrogatories propounded by appellant, the board simply notified appellant on January 11 to appear at the meeting January 12 as originally set, and in the notice said: '* * * at which time you will be given an opportunity to discuss your case in full with the Local Board.' Following receipt of that letter, appellant wired the board on January 12, 1954 at 4:00 p.m., requesting postponement of the hearing because he was in Philadelphia attending informal bar review school in the evenings. His request was granted and no hearing was held on the 12th. On January 19, appellant again wrote the board insisting that all his procedural rights be afforded him, asserting that he had never waived any of them. In another letter of February 4, 1954, appellant in substance made the same assertion to the State Director with a copy to the local board. On May 3, 1954, a letter from the State Director acknowledged appellant's previous letters. The local board then notified appellant to appear for a hearing on May 17. Appellant did appear before the board on May 17, 1954, the date fixed. Appellant says that at the hearing he contested the jurisdiction of the board over his person and contested the composition of the board as well. Appellant presented a written statement which summarized his position and referred to what appellant considered the pertinent parts of the Act and the regulations and a complete history of his case. All members of the board were present. The following day appellant received a I-A classification from the local board. He appealed from that classification within the ten day period. On October 22, 1954, appellant was notified that the Area Appeal Board had denied his appeal. He then received his induction notice. Appellant was inducted on November 23, 1954.
 
 
 18
 A reference to appellant's second and third points in the light of the evidence reveals clearly that appellant was not prejudiced by the manner in which his case was handled before the selective service officials. Appellant testified at considerable length in the district court. All of the evidence on this phase of the case comes from his testimony and the exhibits which he identified. Appellant claims that the failure of the board to afford him a hearing, as requested in February of 1952, at the time his classification was first changed from I-D, is such error as vitiates the whole proceeding. The government answers that the failure to grant the requested 1952 hearing was not prejudicial. In his request for that hearing, appellant informed the board that he was a student in law school at Columbia and that he expected to get his degree in June of 1953. His request followed his I-A classification. It is apparent that the board regarded the letter as a request for a student deferment which the board promptly granted.
 
 
 19
 The evidence shows that appellant accepted both his II-S classifications, indeed his second one was as the result of his own instigation. He was aware of the purpose of Form 109, and certainly of the likelihood that the board in view of his first student deferment, would grant him a second to enable him to graduate. His letter of June 1, 1953 followed his I-A classification made May 28, 1953. He told the board he would not graduate until October, 1953, and that he could not take the bar examinations without his degree. He again referred to Form 109 and that the registrar of Columbia would forward it to the board as soon as his grades were computed. He inquired as to what procedure should be observed '* * * to preserve my student classification until I receive my law degree in October 1953 * * *.' Without replying to appellant's letter, the board directed an induction notice to issue on June 17, 1953. Until the induction notice, it may be fairly said that appellant was fully satisfied with the board's action and its procedure. It is apparent from the record that on receipt of the induction notice appellant's tree of legal knowledge commenced to bear fruit and a litigious spirit replaced his five year contentment with his draft board. In his letter of July 6, 1953, from Wisconsin, appellant, in shotgun fashion, covered the field in searching for defects in the manner in which his case was handled. Nevertheless, in the final paragraph he again pleaded with the board for restoration of his former and appropriate classification, namely II-S, until he received his degree in October of 1953. During the summer and early fall of 1953, appellant made objections to the procedure as well as all prior classifications given him, yet he did not stand on the objections. He continually asked for time in which to complete his studies. The record shows that the board disregarded all objections, but granted appellant the time he desired. A personal appearance before the board could have given appellant nothing more than he gained by the board giving him his two II-S classifications followed by postponement of his induction on September 1, 1953 for an indefinite period. When the board set the date for the January 12, 1954 hearing, appellant had graduated from Columbia and was engaged in studying for the bar examinations. He wanted still additional time. Even after receiving the vexatious series of questions, which have been noted, in response to its notice of the hearing fixed for January 12, the board again granted appellant additional time pursuant to his telegram request. The evidence shows conclusively that the board gave appellant fair and generous treatment from his registration to his induction. The conclusion is that appellant has failed to show that he was prejudiced in any way by the failure of the board to grant him a hearing in 1952. See Lancaster v. United States, 1 Cir., 153 F.2d 718, where, on page 720, it is said:
 
 
 20
 'Thus he gained his end without the necessity of appearing personally before his local board. A personal appearance could have given him nothing more than he gained by his appeal and thus the error of the local board in refusing to hear the appellant personally was purely a technical one which could not have prejudiced any right secured to the appellant and does not justify setting the subsequent order to report for induction aside as invalid.'
 
 
 21
 As to appellant's second point, that is, that he had passed the twenty-sixth anniversary of his birth at the time of his induction, but little need be said. 50 U.S.C.A.Appendix, § 456, which is Section 6 of the 1948 Act, provides:
 
 
 22
 '(h) The President is authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service * * * of any or all categories of persons * * * whose activity in study * * * is found to be necessary to the maintenance of the national health, safety, or interest * * * (emphasis supplied) Provided further, That persons who are or may be deferred under the provisions of this section shall remain liable for training and service in the Armed Forces or for training in the National Security Training Corps under the provisions of section 4(a) of this Act until the thirty-fifth anniversary of the date of their birth.' 50 U.S.C.A.Appendix, § 456(h).
 
 
 23
 Appellant construes the foregoing to mean that only service beyond twenty-six years may be compelled in those cases in which the registrant was classified in a student status at the date of his twenty-sixth birthday. Appellant's twenty-sixth birthday was August 28, 1953. Admittedly on that date he was classified I-A, but the board had granted him a sixty day postponement which was then in effect. The evidence shows that the reason for the sixty day postponement of induction was because of his plea to the board to be permitted to make up the deficiencies in his studies in the hope of graduating in the fall of 1953, as contained in his letter of June 1. As we understand it, appellant's contention is that for him to be liable for service beyond his twenty-sixth birthday, he should have, on that date, been placed in one of the student classifications, that is I-S or II-S. We see no merit in such a contention under the situation presented here. It is believed that the board acted within the discretion permitted it. The board chose not to continue the II-S classification, but postponed induction under a I-A, which again was exactly the result sought by appellant. He was certainly deferred within the meaning of Section 6 of the Act, and was not prejudiced by the board's action.
 
 
 24
 Finally, we turn to appellant's contention that the board was illegally constituted and as a result had no jurisdiction over him. He contends that the jurisdictional area given the board by the State Director is not authorized by the statute or regulations and that the members of the board did not meet the residence requirements.
 
 
 25
 The Pennsylvania Selective Service Local Board Areas manual, issued by the State Director, effective for the period of time under review here, lists Northampton County Local Board No. 114 as having jurisdiction of the City of Bethlehem, Wards 1 to 17, inclusive, which are all the wards in the City. The manual lists, in addition, for Northampton County, Boards 112, 113 and 115, and for Lehigh County, Boards 89, 90 and 91.
 
 
 26
 The office of Local Board 114 is in a bank building in the City and in Northampton County. Wards 1 to 9 and 14 to 17, both inclusive, are in Northampton County and Wards 10, 11, 12 and 13 are in Lehigh County. Appellant contends that this board is thus a hybrid board, as its jurisdictional area crosses county lines, an arrangement which he says is illegal under the statute. He says, that as only one board member was a resident of Northampton County, the board is thus illegally composed. The appellant also contends, and we agree, that the board cannot be construed as an intercounty local board. With reference to the creation and establishment of local boards, 50 U.S.C.A.Appendix § 460(b) authorizes the President in Section (3):
 
 
 27
 '* * * He shall create and establish one or more local boards in each county or political subdivision corresponding thereto of each State * * *. Each local board shall consist of three or more members to be appointed by the President from recommendations made by the respective governors or comparable executive officials: Provided, That an intercounty local board consisting of at least one member from each component county or corresponding subdivision may be established for an area not exceeding five counties or political subdivisions corresponding thereto within a State * * * each member of any local board shall be a civilian * * * residing in the county or political subdivision corresponding thereto in which such local board has jurisdiction.'
 
 
 28
 We think that the board was legally established. The statute law is that one or more local boards in each county or political subdivision corresponding thereto of each state shall be created and established. Board 114 was given jurisdiction within a political subdivision, that is, the City of Bethlehem but in two counties. Nothing is said in the statute requiring that a board's jurisdictional area be restricted within county or political subdivision boundary lines. It is true that the language 'in each county or political subdivision corresponding thereto of each State' requires a board in each county. What is meant by 'or political subdivision corresponding thereto' is not entirely clear, but we think it is merely descriptive of the area in which Congress intended that at least one local board be established. Thus, as a minimum, a board should be in each county or a political subdivision of each state which generally, with regard to its jurisdictional area, should be of a size corresponding to a county or other appropriate political unit in those states and territories which do not have counties, such as Louisiana. This same phrase was used in the 1940 Act and is also used in the language in (b)(3) relating to intercounty local boards, in referring to areas of jurisdiction not exceeding five counties or political subdivisions corresponding thereto. It is evident that the words 'political subdivision corresponding thereto' were not intended by Congress as an express limitation of a jurisdictional area. If so, the result would create an impossible situation, as for instance, it is doubtful that there exists anywhere in the country a political subdivision corresponding to an area not exceeding five counties.
 
 
 29
 Regulation 1604.51 is entitled 'Areas.' The State Director of each State is required to divide his state into local board areas. Normally in such area there should be a population not exceeding 100,000. The directive requires at least one separate local board area in each county. In this instance, in Northampton County, there are four local board areas, and in Lehigh County, three local board areas. Also, each local board area shall be entirely within one appeal board area. It is noted at this point, however, that neither statute nor regulation 1604.51 requires that each local board area be confined within county lines. This section should, therefore, be construed as requiring that the President shall create or establish one or more local boards in each county or political subdivision of each State, which was what was done here.
 
 
 30
 Concluding as we do, that the jurisdictional area of Local Board 114 is within the authorization of the statute and regulations, the members of the board certainly met the residence requirements on and after June 19, 1953. Before that date it is doubtful that the residence requirements had been met. Under the 1948 Act, the board was composed of Chairman Thevenet, a resident of the City of Bethlehem in Northampton County, whose membership on the board is not challenged; board member Bilheimer, who was also at all times a resident of the City, but of a ward situate in Lehigh County; and board member Hanners, whose residence at the time he was appointed is not too clear from the record. However, his residence soon thereafter became Bucks County, two miles from the city line, where he continued to reside until replaced by Collie on June 19, 1953. Collie's residence when appointed and thereafter was in that part of the City situate in Lehigh County. Thus, from June 19, 1953, until and after appellant was inducted, his draft board members lived in the jurisdictional area given the board by the State Director. In this respect, the statute requires that a member's residence be in the county in which such local board has jurisdiction and the regulation, 1604.52 (c), says that the residences of members of a local board shall be in a county in which the board has jurisdiction. The statute and the regulations are thus not inconsistent. As we have held that this board's jurisdiction, including the portions of two counties, is lawful, it also follows that the members met the residence requirements as they resided in the City and in the parts of the two counties in which the board had jurisdiction.
 
 
 31
 Lastly, with reference to appellant's classifications and the composition of the board at the times they were given, it should be recalled that the May, 1953 I-A was given while Hanners was on the board, but in September, after protest, his file was forwarded to the Appeal Board which gave him a new I-A classification in October. His final I-A classification was given after a full hearing held May 17, 1954. At that hearing, as we have shown, the board was properly constituted. All members were present. The I-A then given was timely appealed. The Area Appeal Board denied his appeal. Such action by the Appeal Board amounted to a new classification. See United States v. Stiles, 3 Cir., 169 F.2d 455.
 
 
 32
 The judgment will be affirmed.
 
 
 
 [1]
 '1. At whose request have you directed me to appear at a meeting of your Board to be held on Tuesday January 12, 1954, at 8:00 p.m.?
 '2. If your request is pursuant to a directive of the State Director, the date of the State Director's notice or directive to you?
 '3. If your request for my appearance before your Board is in response to any request from me to appear in person before your board to discuss my classification, which one of my several requests is responsible for the proposed meeting to be held on Tuesday January 12, 1954?
 '4. If such meeting is not being held in response to any request from me, will all the members of Local Board No. 114 be present, and are all the members of Local Board No. 114 residents or Northampton County, Pa.?
 '5. Has the Local Board opened my case at the Direction of the State Director to consider my classification anew at the meeting to be held on Tuesday January 12, 1954?
 '6. If the State Director has not directed you to open my case and consider it anew, has the Local Board opened my case and will it consider anew my classification on Tuesday evening January 12, 1954?
 '7. Has the State Director furnished you with a list of questions to ask me at the meeting proposed to be held on January 12, 1954?
 '8. If so what are the questions?'