Belden R. REAP, Sr., Appellant,

v.

William E. SHAMBORA, as Commanding General, Brooke Army Medical Center, Fort Sam Houston, Texas, Appellee.

No. 16379.

United States Court of Appeals
Fifth Circuit.

March 1, 1957.

Belden R. Reap, Sr., in pro. per.

Lt. Col. Robert T. Hays, U. S. M. C., Asst. to Gen. Counsel, Washington, D. C., Harman Parrott Asst. U. S. Atty., Russell B. Wine, U. S. Atty., San Antonio, Tex., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

This is an appeal from a judgment, based on findings of fact and conclusions of law,[1] entered June 20, 1956, denying appellant's application for writ of habeas corpus brought to obtain release from his classification as I–A (M), Priority 1,[2] and his induction into the military service thereunder. It is the culmination of a series of eight classifications, hearings, and personal appearances, three appeals to the Appeal Board, Presidential appeals, and Court proceedings, first in the Fourth Circuit and now in the Fifth Circuit, which began with appellant's first classification on October 30, 1950.

Throughout this entire period, appellant has consistently and persistently put forward, among other claims, that as a special registrant under Sec. 454(i) (1) and (2) and Regulation 1650.11(k),[3] he was entitled, for reasons of extreme

I. *Findings of Fact:*

1. The only evidence offered herein was the original Selective Service file of the applicant.

2. That the Selective Service file of the applicant reflects that the applicant is a physician.

3. That the applicant was properly inducted into the Armed Forces on Feb. 29, 1956, as a special registrant, priority 1, under the so-called Doctor's Draft Law, Section 4 of the Universal Training and Service Act as amended, 50 U.S.C.A. Appendix, § 454(i).

4. That said induction was pursuant to a valid "Order to Report for Induction", issued by Local Board 53, Selective Service System, Silver Springs, Montgomery County, Maryland.

5. There is in the Selective Service file of the applicant a basis in fact for his classification of I–A.

6. That the classification of I–A which was the basis for the issuance of the "Order to Report for Induction" is supported by substantial evidence.

7. That the action of the Local Board in issuing its "Order to Report for Induction" was not arbitrary or capricious.

8. That the applicant has since been transferred to the Command of the respondent, both being in San Antonio, Texas.

*Conclusions of Law:*

1. This Court has jurisdiction of the parties and subject matter involved.

2. There is in the file of the applicant substantial evidence to support the classification of I–A which was the basis for the "Order to Report for Induction" of the applicant.

3. There is in the file of the applicant evidence which is the basis in fact for the classification of I–A and which was the basis for the "Order to Report for Induction" of the applicant.

4. The applicant is not unlawfully restrained or detained by the respondent.

2. The classification of "I–A" means "Available for military service, Sec. 1622.2 Selective Service Regulations". The "M" stands of Medical, and "Priority 1", as defined in 50 U.S.C.A.Appendix, § 454(i) (1) (2), "Medical", "Dental" and "allied specialist categories", which in part provides:

"In the selection of individuals from among the categories established by subsection (i) [of this section] for induction, the President is authorized, under such rules and regulations as he may prescribe, to provide for the deferment of any individual whose deferment is found to be equitable and in the national interest, taking into consideration the length of his previous service in the Armed Forces (including the Coast Guard and the Public Health Service) of the United States, the extent of his participation in the Army specialized training program or similar program administered by the Navy, reasons of hardship or dependency, and the maintenance of the national health, safety, or interest."

3. "A special registrant shall be placed in Class III–A only if (1) it is determined that his induction into the armed forces would result in extreme hardship and privation to a wife, child, or parent, with whom he maintains a bona fide family relationship, regardless of the date on which such bona fide family relationship was established and (2) by reason of such determination it is considered advisable that he be deferred. * * *"

hardship to his wife and family, to be placed in Class III-A, and to have his induction deferred.

The fact, that, from October 1950 until February 29, 1956, when appellant was inducted into the service, there has been this continuous controversy, is made much of by both appellant and appellee, not, however, as having any direct or precise bearing on the particular question here involved, whether appellant's last classification was correctly arrived at and his induction thereunder effected.

From appellant's standpoint, it is put forward, as indicating bias and prejudice against appellant, a determination with-

out rhyme or reason to bring about his induction,[4] and as a caveat against according any presumption of regularity or propriety to the actions of the local Board.

From appellee's standpoint, the matters are stressed in support of his insistence that the situation, of which appellant complains, has resulted from the persistence in appellant of a persecution complex and an attitude that everyone but him is out of step,[5] and not, as he claims, from a denial of his essential rights.

Here, assigning sixteen specifications of error,[6] appellant attacks the fact

4. Thus appellant, in his brief states: "Appellant was quite clearly being separated from others in his category, and handled 'specially'. At this point it became clear, even to one with the dullest sensitivities, that appellant ceased simply to be a 'special registrant'—he had achieved the status of a 'special project' as well. Local Board #53 tramped doggedly towards its goal—induction of appellant, regulations notwithstanding. In this connection, it is to be noted that there is in the file an undated memo (stamped 'Received in Local Board #53, June 24, 1954') reading as follows:

" 'Local Board #53 Rush Important I am holding up induction call for special registrants on account of Dr. Reap. Please have Mrs. Mac call me about him not later than 0930 Friday, 25 June 1954. Many Thanks. Reginald C. Morrison, Major, USAF, Manpower Officer.'

This certainly suggests that the State Director's Office (where Major Morrison works) was not only aware of appellant's 'special project' status, but was not unwilling to cooperate with the local Board in this respect."

5. In support, appellee says: "Appellant has consistently argued that the Selective Service System has given him special attention. If this is the case, then it is only because the appellant has so insisted. Their motives, procedures and results have been vigorously contested at every turn. Even at that, the appellant does not now contend they refused him but one thing and that is a deferred classification of III-A. His evidence was equivocal, and unpaid patriotic board members and medical advisors have consistently refused to be badgered into accepting with-

out question the appellant's own biased diagnosis and interpretation of his own highly equivocal information."

6. "1. Improper action of the Local Board in overruling prima facie case made out by appellant without having any contradictory evidence of any type before it.

"2. Failure of the local board to inform appellant of the reasons for overruling his evidence.

"3. Improper referral of medical evidence for 'evaluation' by Medical Advisor who had been accused of bias, and who made no proper effort on any occasion to clarify any evidence submitted by appellant and as to which the local board may have required 'clarification'.

"4. Failure of the local board to inform appellant of the reasons why the Medical Advisor 'overruled' the medical evidence submitted to the board.

"5. Failure of the local board to afford registrant an opportunity to rebut, answer, or detract from the force of the 'evidence' which it considered of sufficient merit to overrule appellant's evidence.

"6. Improper participation in appellant's case by the Medical Advisor who was not authorized to take part therein, either by the law or the regulations.

"7. Failure of the Medical Advisor properly to develop the facts in the case, or to afford appellant a hearing, or an opportunity to rebut 'evidence' which he considered detrimental to registrant's case.

"8. Ambiguity and differences between the 'evaluations' furnished the local board by the Medical Advisor, and his published article on the same subject, which cast serious doubt upon the fairness of his 'evaluations'.

findings of the district court as mere general conclusions and as inadequate as evidentiary findings to support the judgment, and proceeding, in apparent disregard of the fact that what is in question here is not a denial of a statutory exemption but the failure to grant a requested deferment, cites in support of his attack our cases of Arndt v. United States, 5 Cir., 222 F.2d 484, and Olvera v. United States, 5 Cir., 223 F.2d 880, the Sicurella and Simmons cases, reported respectively in 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 and 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453, and a host of Jehovah's Witnesses cases. So proceeding, he undertakes, by attacks upon the local board's conclusions, that they are not detailed enough, and on the local board, that it refused to be catechized by him, to establish a basis upon which he can present a claim that he has been denied, not an exemption to which he is entitled as matter of right, but a deferment which can be granted only if it is "found to be equitable and in the national interest."

On his part, the appellee points to the facts: that Congress, in making the decisions of the local boards final, chose not to subject administrative action under the Selective Service Act to the customary scope of judicial review, which obtains under other statutes; that it made the decisions of the local

board, arrived at in conformity with the regulations, final and unreviewable, even though they may be in fact erroneous; and that, even in exemption cases, the question of the jurisdiction of the local board to act is reached only if there is no basis in fact for the classification which it gave the registrant. Pointing out that the test to be applied is not the test of substantial evidence, and that "If the facts are disputed, the board bears the ultimate responsibility for resolving the conflict—the courts will not interfere", Dickinson v. United States, 346 U.S. 389, at page 396, 74 S.Ct. 152, at page 157, 98 L.Ed. 132, appellee insists that the record in this case will not support appellant's attempt to bring himself within the decision in Witmer v. United States, 348 U.S. 375, at page 383, 75 S.Ct. 392, at page 396, 99 L.Ed. 428, and the other cases he invokes, and that the judgment appealed from must be affirmed.

Agreeing with appellee that this is so, we think it clear that the appellant has misconceived both the law of the case and the showing made by the Selective Service file. He has misconceived the law because, claiming, as he does, that he has been deprived of *a right*, he overlooks the fact that his is not a claim to a statutory *exemption from service*, it is a claim for deferment under a statute [7] and a regulation enacted

"9. Improper referral of information from appellant's file to Col. Ash, without consent of appellant, and without affording him an opportunity to rebut, or explain 'evidence' adduced.

"10. Failure of the local board to use powers conferred upon it by Selective Service Regulations, Sect. 1621.15, in order to develop any matters as to which they might have had doubt.

"11. Improper voting action, and an inconsistent position taken by one local board member, who though consistently voting against appellant, admitted that he was not familiar with appellant's case.

"12. Improper processing of appellant in direct contravention to Operations Bulletin #102, as clearly indicated by evidence in appellant's Selective Service File.

"13. Failure and refusal of the local board promptly and properly to record

minutes of its actions, thereby circumventing complete and proper judicial review of board actions.

"14. Purposeful procrastination of the local board in failing to record minutes promptly, and in time for appellant to know their content before he wrote his final appeal to the Maryland Board of Appeals, Selective Service System, on Feb. 27, 1955.

"15. The record indicates a consistent pattern of prejudice evident in the actions of Selective Service and resulting in a deprivation of due process.

"16. The findings of the lower court was incomplete, and improper, in that the court failed to consider the basic issue of due process in the case."

7. "(2) * * *

"In the selection of individuals from among the categories established by sub-

pursuant thereto, note 3 supra, which condition the deferment upon (1) a determination that the induction would result in extreme hardship and privation, and (2) the further determination that in the national interest it is considered advisable that the applicant be deferred.

His position is erroneous in fact because, while he did testify and furnish other evidence to the fact, indeed the fact is admitted, that Mrs. Reap has been in bad health for several years, he overlooks the fact that the statute says nothing about the mere existence of bad health. It conditions the deferment upon a determination whether or not the induction would result in "extreme hardship and privation", and a further determination that the deferment is found to be equitable and in the national interest.

Upon this record, whatever might have been thought of the claim of hardship upon its first introduction, the fact that his wife's illness has manifested itself in various forms over the whole period of the controversy, some six years, while tending, of course, to prove that her case will not yield completely to treatment, tends, on the other hand, to show that the hardship is merely that of a more or less chronic state of illness requiring medication and treatment which it is undisputed that appellant could get for his wife at any fixed army installation to which he would be at all likely to go.

Realizing the difficulties arising out of the fact that there was opinion of an army medical officer contrary to his, and the further fact that the law does not compel the board to accept his testimony and opinion on the question of "extreme hardship" as binding on it, the appellant presses his attack upon what we regard as a highly untenable ground. This is that the board deprived him of his rights by merely stating its conclusion, that the case was not one of extreme hardship, and by not, either as a matter of original statement or in response to his effort to catechize it, giving detailed reasons for so holding.

■ We find nothing in the regulations or in the statute requiring the board to write opinions or give detailed reasons for its conclusions. Indeed, in United States v. Greene, 7 Cir., 220 F.2d 792, at page 794, it has been affirmatively declared that the local board is not obliged to give any reasons for its conclusions or make any findings except the classification itself. There the court said:

"For the most part classification by symbol is the sole articulation of Board decision, indeed no other requirement is prescribed by Congress"

■ We, therefore, think it plain that, upon this record, which contains not one affidavit or other piece of evidence in the file which shows anything concerning extreme hardship except the fact that Mrs. Reap has been, and is, in poor health and may continue to be, the appellant's attack upon the board's classification as a deprivation of due process, was not at all made out. Under the regulations, which have the force of law, mere proof of illness is not even prima facie proof of extreme hardship and privation, and, on this record, nothing more was shown.

Neither is appellant on any firmer ground in his objection to the board's submitting the medical evidence to the inspection of an army medical officer. Nothing in the opinions he cites support his claim that this action deprived him of due process. Indeed, the two Eagles

section (i) [of this section] for induction, the President is authorized, under such rules and regulations as he may prescribe, to provide for the deferment of any individual whose deferment is found to be equitable and in the national interest, taking into consideration the length of his previous service in the Armed Forces (including the Coast Guard and the Public Health Service) of the United States, the extent of his participation in the Army specialized training program or similar program administered by the Navy, reasons of hardship or dependency, and the maintenance of the national health, safety, or interest." 50 U.S.C.A.Appendix, § 454(i).

cases, Eagles v. U. S. ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308 and Eagles v. U. S. ex rel. Horowitz, 329 U.S. 317, 67 S.Ct. 320, 91 L.Ed. 318, dealing with advisory panels are in effect to the contrary.

 Finally, nothing in any of the conscientious objector cases has application here. In the absence of a positive showing of arbitrary action, the board had the right, without writing an opinion or giving any detailed reasons for doing it, to reach and announce its conclusion, that a case of extreme hardship within the statute and regulations was not made out, and to deny him the classification he sought.

In addition, if the board had determined that his induction would result in extreme hardship, but had declined to place him in class III–A, this would not have availed appellant without further proof that by reason of such determination the board had determined it advisable in the national interest that he be deferred. There is no proof in the record whatever that it had so determined, while its action in not classifying him as in class III–A must be regarded as a determination to the contrary.

While appellant admits that he had no absolute right to a deferment and that the board had the right, if it considered it advisable that he be not deferred, to refuse a deferment, he furnishes no evidence that a case was made out which would make such refusal an arbitrary act, indeed the file contains a memorandum showing that on account of many claims for deferment and for classification as III–A, it was becoming very difficult to obtain the doctors needed for the service. Considered in its whole breadth, all that this case presents is an effort on appellant's part to maintain that, because he sincerely felt and believed, and furnished evidence which he believed showed, that his wife's condition presented a case of extreme hardship, the board was bound to accept his evidence and act upon his belief and, determining that this deferment was in the national interest, grant him the classification he demanded. The statutes and regulations are not so drawn. Nothing in the Selective Service file shows arbitrary or unwarranted action. Nothing is shown by appellant to overthrow the findings of the district judge.

The judgment is affirmed.