CHICAGO FIRE FIGHTERS UNION, LOCAL 2, Claude Norwood, John Fitzgerald, Julius Stanley, James Butler, Eli Richardson, Raymond Chambers, Hassan Abdurrahman, Cedric Young, John Abramski, Todd Anderson, and Joe Elmore, Plaintiffs,

v.

CITY OF CHICAGO, Louis T. Galante, Richard Fitzpatrick, Jack Sterling, Frank Szwedo, and John Does, I through X, Being Sued Individually and in Their Official Capacities, Defendants.

No. 87 C 0865.

United States District Court, N. D. Illinois, E.D.

July 13, 1989.

Stephen B. Horwitz, Robert S. Sugarman, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for plaintiffs.

Jonathan P. Siner, Judson H. Miner, Corp. Counsel, Darka Papushkewych, Charles E. Ex, Sarah Vanderwicken, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the defendants' motion for partial summary judgment on Count II of the plaintiff's complaint, pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the motion is granted.

## FACTS

The plaintiffs in this case are eleven fire fighters and the union to which they belong. They are suing the City of Chicago, as well as various officers and officials of the Chicago Fire Department (CFD), for violation of their Fourth and Fourteenth Amendment rights.

The suit concerns General Order 85–007, dated November 7, 1985. This order, promulgated by the CFD, read aloud at roll calls and posted on station house bulletin boards, allows for unannounced, warrantless searches of lockers assigned to and routinely used by fire fighters. The order was promulgated in response to CFD concerns that fire fighters had engaged in alcohol and drug use while on duty. The CFD prohibits the possession, sale or use of alcohol on fire department premises. In spite of this prohibition, inspections of lockers in one CFD station uncovered a cooler of beer. As well, CFD officials and Fire Fighter's Union officials have stated that there is a definite problem with alcohol and drug abuse among fire fighters.

The CFD drafted and announced General Order 85–007 pursuant to a previous district court order which required them to delineate the rights of fire fighters during administrative searches. The order was submitted to the Firefighters Union for discussion and suggestions. The Union suggested several changes, filed a grievance concerning that 1985 order but took no further action prior to filing this lawsuit in 1987. The order states in pertinent part;

A. Access to assigned lockers shall be limited to the individual member, subject to the following.

1. Semi-annual locker inspection;

2. Inspection, in the presence of member, at any time by a company officer or above, to determine whether contents are in violation of rules or regulations;

3. Inspection, in the presence of member, by Company Officer or above, pursuant routine inspection of quarters;

4. Access by a properly identified sworn member of any law enforcement agency, pursuant warrant or upon command of said law enforcement officer;

5. Company Officer, upon the death of member, to secure member's personal belongings for the benefit of deceased member's family. Such access shall be in the presence of other officers and/or witnesses, and an inventory of recovered property recorded and witnessed.

On December 16, 1986, CFD officials conducted a locker search at the firehouse located at 3421 South Calumet in Chicago. The plaintiffs were among those whose lockers had been searched. After the search, the plaintiffs filed this suit to have General Order 85–007 and searches conducted under it declared unconstitutional.

Both parties have complied with Local Rule 12. The court adopts the defendant's relevant facts as set out below:

1. On-duty firefighters have used alcohol and illegal drugs. (Brennan Aff., par. 6 and Tully Aff., par. 8);

2. Alcohol has been occasionally stored in firehouse lockers. (Brennan Aff., par. 5 and Tully Aff., par. 7);

3. All lockers located in CFD firehouses are the property of the CFD. (Wilkinson Aff., par. 18);

4. Since 1985, the CFD's Employee Assistance Program received 264 new cases related to drug and alcohol abuse. (Tully Aff., par 5);

5. The head of the CFD Employee Assistance Program, Captain Paul Brennan, estimates that at least 10% of all firefighters suffer from substance or alcohol abuse problems. (Brennan Aff., par. 4);

6. The President of Firefighters Local 2, Martin Holland, admits that the Union recognizes that there are some real problems among firefighters in dealing with alcohol and drugs. (*See*, Holland Dep. at 32–33);

7. A Steward of Firefighters Local 2, and a member of the Union's Rules and Regulations Committee, Charles O'Donnell, states that there definitely is an alcohol and drug abuse problem in the CFD. (*See*, O'Donnell Dep. at 12);

8. Before issuing the locker inspection order, CFD officials submitted a draft for discussion to Local 2's Rules and Regulations Committee which existed pursuant to the firefighters' collective bargaining contract. (Exhibits K & L and Wilkinson Aff., at par. 5, 6);

9. Local 2's Committee reviewed the draft locker order, met with CFD representatives and made several recommendations for changes. (Exhibit M and Wilkinson Aff., at par. 7);

10. The CFD advised the Union well before the locker order was finally issued, as to its contents and rationale. (Wilkinson Aff., at par. 8);

11. In April 1980, an inspection of lockers in the fire station housing Engine Number 26, at 10 North Leavitt Street, Chicago, uncovered beer and a cooler. (*See*, O'Donnell Stipulation, par. 3 and Wilkinson Aff., par. 2);

12. After several employees assigned to that firehouse sued the City and officials involved in the inspection (*O'Donnell v. Ryan*, 81 L 0084,) Judge William Hart entered an order, requiring, *inter alia*, the Fire Commissioner to issue orders that would "delineate the rights of Chicago Fire Department members during administrative investigations.... and ... the rights of members of the CFD in the use of lockers owned by the Chicago Fire Department." (Judgment Order, par A);

13. On November 7, 1985, General Order 85–007, regarding Locker Privileges was issued by the CFD and distributed throughout the department. (Complaint, par. 33, Wilkinson Aff., par. 10)

14. General Order 85–007 was distributed on November 7, 1985 to each fire company in each fire house. (Wilkinson Aff., par. 11);

15. When an order is received by a fire company, General Order 84–007 requires that any Order received be read and explained by the Company Officer at a roll call to every company member reporting for duty. (Wilkinson Aff., par 12);

16. A Steward of Firefighters Local 2, and member of the Union Rules and Regulations Committee, Lt. Charles O'Donnell, states that he read and summarized General Order 85–007 at roll call and posted it on the bulletin board of his fire house and in the binder for records or for orders. (*See*, O'Donnell Dep. at 29–30);

17. Under the Municipal Code [of the City of Chicago], the Fire Commissioner is responsible for the "management and control of all matters and things pertaining to the fire department and of all of the persons employed therein." (Municipal Code of Chicago, Ch. 12, sec. 12–4, Wilkinson Aff., par. 13);

18. By the authority granted him in the Municipal Code, the Fire Commissioner prescribes and publishes rules, regulations, practices and procedures and general orders and special directives for the Fire department. (Wilkinson Aff., par. 13);

19. The CFD Rules and Regulations forbid the possession or drinking of intoxicating liquors on or about Fire Department premises. (Rule 61.003, Wilkinson Aff., par. 15);

20. General Order 87–008, a substance abuse order, issued on February 1, 1987, forbids use or positive presence while on duty, of illegal drugs or alcoholic beverages as well as possession, sale or delivery of illegal drugs or alcoholic beverages while on duty. (General Order 87–008, Wilkinson Aff., par. 15);

21. CFD officials promulgated the locker inspection order largely in response to the alcohol and drug problem in the department. (Wilkinson Aff., par. 16);

22. On December 16, 1986, CFD officials inspected the lockers of on-duty personnel at the firehouse located at 3421 S. Calumet, Chicago, Illinois. (Complaint, Par. 25–26). This inspection occurred after complaints from neighbors of the firehouse and subsequent surveillance operations which lead CFD officials to reasonably suspect that alcohol and/or drug use or possession, in violation of Department Rules and Regulations, was occurring at 3421 S. Calumet. (*See*, Richard Julian Dep. at 3, 13–26);

23. Those persons whose lockers were inspected on December 16, 1986 and Local 2 of the Chicago Firefighters Union brought suit against the City of Chicago and various fire department personnel. (Complaint);

24. In Count I of this Complaint, Plaintiffs allege that the inspection as carried out violated their Fourth and Fourteenth Amendment rights. (Complaint);

25. In Count II, Plaintiffs claim that the locker order itself violates the same rights because, under the order, locker inspections "can be compelled without a warrant and without probable cause or reasonable cause to believe that any illegal activity has occurred." (Complaint, par. 34).

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.; see First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569, reh. den., 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.*

The plaintiff has claimed few issues of material fact in its 12(f) statement. All of the issues raised are either non-responsive to the defendant's stated facts or not an issue material to the decision in this case. Paragraph 3 is non-responsive, in that because fire fighters are given the lockers to store personal belongings does not challenge that the lockers are property of the CFD. Paragraph 11 is likewise unresponsive, as the defendants state that the court in 1985 entered an order mandating

delineation of locker inspections and not that the court had approved of the Locker Order. Further, paragraphs 12, 13, 14, and 15 do not raise genuine issues of material fact as they are either non-responsive or insufficiently supported. These paragraphs claim that plaintiffs were never made aware of the existence of the Locker Order. Contrary to their assertions, paragraph 33 of Count II of the plaintiff's complaint admits that plaintiffs were advised of the existence of General Order 85–007. Also, the assertion that plaintiffs were unaware of the existence of the order does not respond to the statement that the order was distributed, announced and posted. Moreover, plaintiffs have wholly failed to support these statements with references to affidavits or the record, as is required by Local Rule 12(f). Because of this, the defendant's facts are deemed admitted under the rule. Likewise, paragraphs 22, 23 and 24 are non-responsive to the assertions of fact in the 12(e) statement. Therefore, no genuine issues of material fact are raised. The court now turns to the constitutionality of General Order 85–007.

### A

The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized. U.S. Const. amend. IV

The Fourth Amendment applies to the states through the Fourteenth Amendment, and has also been applied to cover conduct by government officials in various civil activities. *O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). Thus, it has been applied to conduct by school teachers, *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), building inspectors, *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and OSHA inspectors, *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

Therefore, the actions of the CFD and its officers are restricted by the Fourth Amendment.

### I.

The Fourth Amendment is implicated in a case only if the plaintiff can show that the conduct of the defendant has infringed "an expectation of privacy that society is prepared to consider reasonable." *O'Connor,* 480 U.S. at 715, 107 S.Ct. at 1497. Generally, public employees have an expectation of privacy in their places of employment. *O'Connor,* 480 U.S. at 716–17, 107 S.Ct. at 1497–98, *but see, Shields v. Burge,* 874 F.2d 1201, 1206 (7th Cir.1989) (a public employee might not have any reasonable expectation of privacy against his superiors). However, the operational realities of the work place may make some expectations of privacy unreasonable. *Id.* A public employee's expectation of privacy can be reduced by virtue of office practices or by legitimate regulation. *Id.* Therefore, the court must look to the work conditions present at CFD firehouses to determine if the fire fighters have a legitimate expectation of privacy that society would consider reasonable. Employee's expectations of privacy are diminished by reason of their participation in an industry that is regulated pervasively to ensure safety, a goal dependent, in substantial part, on the health and fitness of the employees. *Skinner v. Railway Labor Executives' Ass'n,* — U.S. ——, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), *see also New York v. Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (junkyard owner engaged in heavily regulated industry had little expectation of privacy); *Shoemaker v. Handel,* 795 F.2d 1136 (3d Cir.1986), *cert.den.,* 479 U.S. 986, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986) (breathalyzer and urine testing permissible for jockeys). In the case before the court, the highly regulated nature of the fire department serves to lower the expectation of privacy of individual fire fighters.

As was stated above, fire fighters work in 24 hour shifts. During their tours of duty, fire fighters are subject to various rules and regulations which govern the op-

erating of the fire department. Regulations cover apparel, hours beds may be occupied, facial hair and freedom of movement about the fire house. Fire fighters are also bound by general orders and special directives issued by the Fire Commissioner. These commands have the same affect as rules and regulations. Such discipline and the chain of command are extremely important in the military type structure of the fire department. Consequently, the working conditions at the fire houses are strictly regulated and controlled. Therefore, the individual fire fighter's expectation of privacy is diminished due to the pervasive regulation in the industry. The strict regulation and control in this case make the fire fighter's expectation of privacy unreasonable. Accordingly, the locker searches do not infringe on a valid expectation of privacy.

## II.

■ Moreover, the plaintiffs in this case knew or should have known of General Order 85–007. The fire department has stated that Order 85–007 was issued and distributed throughout the fire department. General Order 84–007 requires that all orders received by each fire company be read and explained at roll call to all fire fighters reporting for duty and then posted at the firehouse. The plaintiff's claims that they were unaware of the existence of General Order 85–007 does not negate the affect of that order. Despite repeated allegations to the contrary in their 12(f) statement, plaintiffs admit that they were advised of General Order 85–007 by District Chief Fitzpatrick on or about November 7, 1985. Plaintiff's Complaint, Count II, par. 33.

Moreover, as stated previously, the facts set forth in the defendants' 12(e) statement are deemed admitted unless properly controverted by the opposing party. Therefore, the court assumes that General Order 85–007 was distributed to all fire companies, was read and summarized at roll call by Lt. Charles O'Donnell, a steward of Fire Fighters Local 2, and was posted on the bulletin board of his firehouse. The plaintiffs' subjective unawareness of that order does not shelter their expectation of priva-

cy from a legitimate regulation. We are all bound by the law, even if we are subjectively unaware of the existence of a law. *U.S. v. Mansavage*, 178 F.2d 812 (7th Cir. 1949), *cert. denied*, 339 U.S. 931, 70 S.Ct. 665, 94 L.Ed. 1351 (1950) (ignorance of the law is no defense); *United States v. Moore*, 627 F.2d 830 (7th Cir.1980), *cert. den.*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981) (mistake of law must be objectively reasonable). By analogy, the plaintiffs are charged with constructive knowledge of the rules and orders promulgated and disseminated by the Fire Commissioner, especially after their union representatives were involved in the preparation of the locker search order in conjunction with the CFD. Accordingly, the fire fighters reasonable expectation of privacy has been reduced by virtue of a legitimate regulation. The plaintiffs were aware that their lockers were subject to warrantless searches to discover violations of rules and regulations. In the face of announcements and postings of General Order 85–007, it cannot be said that the plaintiffs had a legitimate expectation of privacy that society would consider reasonable.

## B

■ Furthermore, assuming arguendo that the plaintiffs did have a reasonable expectation of privacy, this expectation is outweighed by the substantial interest the CFD has in assuring that its employees remain sober and drug free while on the job.

The Fourth Amendment does not prohibit all searches, only those that are unreasonable. *Schmerber v. California*, 384 U.S. 757, 768, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966). The determination of reasonableness requires balancing the need to search against the invasion which the search entails. *T.L.O.*, 469 U.S. at 337, 105 S.Ct. at 740, *Shields*, 874 F.2d at 1206. On one side of the balance, we place the individual's legitimate expectations of privacy; on the other, the government's need for effective methods to deal with legitimate governmental interests. *Skinner v. Rail-*

*way Labor Executives' Ass'n,* 109 S.Ct. at 1414.

One of the touchstones of the Fourth Amendment is that a search must be supported by a warrant issued upon probable cause. *Treasury Employees Union v. Von Raab,* — U.S. —, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). However, when a Fourth Amendment intrusion serves a special governmental need, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the government's interest to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context. *Id.,* 109 S.Ct. at 1390.

Two recent Supreme Court Cases, *Skinner* and *Von Raab,* clearly show how this balancing test is to be carried out. In *Skinner,* the Federal Railroad Administration promulgated a rule which called for blood and urine testing, without probable cause, of railway employees involved in major train accidents. The court held that;

> The government's interest in regulating the conduct of railroad employees to ensure safety, like its supervision of probationers or regulated industries, or its operation of a government office, school or prison, likewise presents special needs beyond normal law enforcement that may justify departures from the usual warrant and probable cause requirements.

*Skinner,* 109 S.Ct. at 1414.

The court went on to hold that, where privacy interests implicated by the search are minimal and the governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search can be reasonable despite the absence of such suspicion. *Id.* at 1447.

That same day, the court also decided *Von Raab.* In this case, the United States Customs Service instituted a regulation requiring drug testing for placement or employment in areas that required carrying firearms, drug interdiction and handling of classified materials. Referring to its decision in *Skinner,* the court stated that the traditional criteria used to analyze reasonableness in the probable cause standard would not be helpful in analyzing the reasonableness of routine administrative functions, especially where the government seeks to prevent the development of hazardous conditions or detect violations that rarely generate articulable grounds for searching a particular person or place. *Von Raab,* 109 S.Ct. at 1391–92. The court stressed that;

> [T]he public should not bear the risk that employees who may suffer from impaired perception and judgment will be promoted to positions where they may need to employ deadly force."

*Id.* at 1393.

Most importantly, the court held that, in certain circumstances, the need to discover latent or hidden conditions, or to prevent their development, is sufficiently compelling to justify the intrusion on privacy entailed by conducting such searches without any measure of individualized suspicion. *Id.* at 1392. Moreover, this compelling interest extends not only to the place to be searched, but to closed containers within those places. *Shields,* 874 F.2d at 1208 (closed containers may be searched during a lawful workplace search).

When this analysis is applied to the case before the court, the balance tips strongly in favor of the CFD. Fire fighting is a job that entails incredible levels of stress and exertion. Fire fighters are called upon to deal with emergencies on a moment's notice. Perhaps even more than railway employees, they "discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences." *Skinner,* 109 S.Ct. at 1419. The plaintiffs have not disputed that on duty fire fighters have used alcohol and drugs. The CFD has promulgated rules and regulations prohibiting even the mere possession of alcohol or drugs on fire department property. Public safety justifies prohibiting employees from using alcohol or drugs while on duty or while subject to a call to duty. This also justifies the exercise of supervision to assure that restrictions are in fact observed. *Skinner,* 109 S.Ct. at 1415. Likewise, the

CFD has a substantial interest in assuring that their fire fighters comply with this order. As in *Skinner* and *Von Raab*, the purpose of the regulation is not to assist in the prosecution of employees but to prevent accidents and casualties resulting from impairment of employees by alcohol or drugs. The public interest in assuring that fire fighters are alert and fully able to carry out their duties while on the job is certainly compelling.

In comparison, the intrusion on the fire fighters' privacy expectations is minimal. The level of intrusion is relevant to a search's reasonableness. *Shields*, 874 F.2d at 1209. The type of search to be conducted here is minimally intrusive. The Supreme Court has allowed urinalysis and blood testing to be conducted without a warrant or probable cause in order to further governmental aims. Such tests necessitate intimate intrusions into one's own body, by way of a needle in a blood test, or performance on command of a very private bodily function, as in urinalysis. The intrusion of a locker search, by way of comparison, is slight. The fire fighters are assigned the lockers by the CFD, but are not required to use them. The lockers remain the property of the CFD. The searches in this case were carried out in the presence of the plaintiffs, and merely examine the contents of the locker for evidence of alcohol or drug use. Therefore, the searches fall far short of the intrusiveness that the Supreme Court has allowed the government to conduct in order to carry out significant governmental objectives. The substantial interest of the CFD, on behalf of the public at large which it serves, in assuring that all fire fighters are able to perform their jobs safely and effectively greatly outweighs the fire fighters expectation of privacy in their station house wall lockers.

Accordingly, the defendants' motion for summary judgment on Count II of the complaint is granted.

IT IS SO ORDERED.